568 A.2d 29

**MARYLAND STATE POLICE**

v.

**Michael W. LINDSEY.**

**No. 80, Sept. Term, 1988.**

Court of Appeals of Maryland.

Jan. 12, 1990.

---

Millicent Edwards Gordon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Pikesville, for petitioner.

Allen G. Windsor (David S. Harris, both on brief), Pikesville, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL,* JJ.

BLACKWELL, Judge.

This administrative appeal involves the dismissal of a Maryland State Police officer, Tfc. Michael W. Lindsey (Lindsey), following an incident in which Lindsey shot and killed the driver of a vehicle pursued for traffic violations. Subsequent to the incident, an administrative investigation was conducted which resulted in Lindsey being charged with violating the following three agency regulations:[1]

1) Improper Discharge of a Firearm at a Moving Vehicle: Chapter 22, Section II, Subsection 2–3C, Maryland State

---

* Blackwell, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. These charges were in effect at the time of the incident. Subsequently, the chapters have been renumbered and amended. *See* Agency Patrol Manual, (rev. ed., October 1, 1989). The provisions of the former charge 1 have been deleted in Ch. 22, Section II, Subsection 2–3. Second, the prohibited use of a firearm rules now appear under Subsection 2–5. The third charge relating to excessive force appears verbatim in Ch. 28, Section III, Subsection 2–1.

Police Agency Patrol Manual;[2]

2) Prohibited Use of a Firearm: Chapter 22, Section II, Subsection 2–4, Maryland State Police Agency Patrol Manual;[3]

3) Use of Excessive Force in Making an Arrest: Chapter 28, Section III, Subsection 2–1, Maryland State Police Agency Patrol Manual.[4]

On November 13, 1986, an administrative hearing board of the Maryland State Police (Board) found Lindsey guilty of violating the second regulation, and more specifically, of violating subsection 2–4a(3), which prohibits discharge of a firearm "in any attempt to apprehend a misdemeanant." The Superintendent of the Maryland State Police adopted the findings and recommendation of the Board, terminating

---

**2.** Subsection c. of Section 2–3, **Firearm Use—Permitted,** reads in its entirety:

 c. Consistent with this subsection, firearms may be discharged at or from a moving vehicle. Firearms may be used to disable a pursued vehicle only:

 (1) When continued operation of the vehicle will result in loss of life by an innocent person, and

 (2) All other reasonable, less forceful means of ending the pursuit have been exhausted, e.g. running roadblock, stationary roadblock, and

 (3) Reasonable caution is taken to insure that no innocent person is injured as a result of such action, and

 (4) After the employee has made every reasonable effort to obtain supervisory approval for such action.

**3.** Subsection a. of Section 2–4 **Firearm Use—Prohibited,** reads as follows:

 a. A police employee of the Agency shall not discharge his firearm under the following circumstances:

 (1) As a warning

 (2) In any felony case which does not involve an actual or threatened attack which the employee has probable cause to believe could or has resulted in death or life-threatening injury to himself or another person.

 (3) In any attempt to apprehend a misdemeanant.

**4.** Chapter 28, Section III, Subsection 2–1 states in full:

 2–1 A police employee should use only such force as may be necessary to take the prisoner into custody. A trooper's baton is primarily a symbol of authority, and should be used only in cases of necessity. If, however, he is resisted he may repel force with force.

Lindsey's employment, effective December 8, 1986. The Circuit Court for Charles County affirmed.

In an unreported opinion, the Court of Special Appeals reversed holding, "the Hearing Board's conclusion that appellant violated subsection 2–4a(3) [prohibited use of a firearm] is not supported by substantial evidence." Apparently, the Court of Special Appeals found the Board's not guilty determination on the third count, relating to excessive force, to be inherently inconsistent with the guilty finding on the second charge. The intermediate appellate court reasoned as follows:

> First, the Hearing Board found that appellant was not attempting to apprehend the violator when he discharged the fatal shot. Second, the Hearing Board found appellant was acting in self defense when he fired the shot. In order to have been acting in self defense when using deadly force, he must have been faced with the violator's deadly force. Hence, the Hearing Board implicitly found that the violator was not a misdemeanant but a felon.

We granted certiorari to consider the administrative appeal standard of review as applied in this case. Under the circumstances, we conclude the Court of Special Appeals improperly substituted its interpretation of the merits of the charges for that of the Board. We shall reverse.

Lindsey's main contention is that the findings and contentions of the Board were not supported by substantial evidence. The factual background of this case involves an extensive police chase.

On December 18, 1985 at approximately 11:30 P.M., Tfc. Michael White (White) was traveling southbound in an unmarked vehicle on Maryland Route 5 in Charles County, Maryland. While stopped at a traffic light at the intersection of Route 5 and Mattawoman–Beantown Road, he observed a white Pinto in the left-hand turn lane proceed through a red light. White activated his emergency equipment, first the emergency lights and then an electronic siren, in an effort to stop the driver for the traffic violation.

The Pinto continued and made a turn onto Pinewood Road, and a short distance later travelled down the wrong side of this road. The Pinto's initial speed was estimated at 35 miles per hour. White testified he then radioed the Waldorf Barrack and gave the duty officer a description of the vehicle, the tag number, and informed that officer of the fact that the vehicle was not stopping. White testified he observed other police vehicles join in the pursuit.

Lindsey, operating unit "H–14," caught up with White and the Pinto on Mattawoman–Beantown Road near the Idlewood Trailer Park. As they proceeded up Mattawoman–Beantown Road, Lindsey attempted to pass the suspect vehicle on the left-hand side in an attempt to cut the vehicle off, at which time the suspect vehicle made an abrupt move to the left. Lindsey was required to take evasive action and dropped back behind the suspect vehicle. When the vehicles reached the intersection of Mattawoman–Beantown and Route 5, the Pinto took the northbound spur on Route 5, and proceeded up a grassy embankment and then back down onto Route 5. Meanwhile, Lindsey had passed a civilian vehicle in the spur on the left side and emerged in front of the Pinto. At that moment, Lindsey heard three loud pops and then a radio transmission, "watch it, he is shooting at you." The Pinto accelerated to a higher rate of speed toward the rear of Lindsey's vehicle. Lindsey testified he heard someone state, "watch it, he is going to hit you or he is trying to hit you, something to that effect."

The Pinto veered across the grassy median strip, proceeding northbound in the southbound lanes of Route 5. Lindsey then fired four shots from his service revolver at the right rear tire of the Pinto in an attempt to disable the vehicle. The Pinto still refused to stop and led the pursuing police officers to the back of Thomas Stone High School and crossed the parking lot at the rear of the high school where it eventually ran into a fence, coming to rest at an acute angle. White's vehicle stopped a short distance behind the Pinto at the same angle. Lindsey pulled his vehicle to the right of the Pinto with Officer Appleby's vehicle stopping behind Lindsey.

White, who was the first to arrive on the scene, was in the process of making the arrest. Lindsey arrived moments later. As Lindsey exited his vehicle, he withdrew his service revolver. The suspect had already exited his vehicle and was attempting to flee over the fence. Lindsey shouted at him to freeze. The suspect descended from the fence and allegedly made a turning motion toward his right in the direction of Lindsey. Lindsey fired a single shot from his service revolver, striking the suspect in the back.[5] The suspect later died as a result of the gunshot wound.

Lindsey related his thought-process during the incident to the Board:

> [Whoever] the guy was, he was running from something, and I don't know what Mike White had tried to stop him for, ... until I found out later. He was running from something, he had already tried to run me off the road twice, somebody told me, a professional police officer was behind me, told me I was being shot at, tells me that he saw something cause I didn't see it, that he would try almost anything to get away. Cause he didn't want to be caught. I don't know if he had a stolen car ... I didn't really have any idea what he had done and ..., again, I didn't know if he had just stolen the car, if he had just killed somebody or what, but he evidently did not want to be caught.

Lindsey further testified, "I didn't see his hands, I don't know what he was doing. I figured ... after being told that I was shot at, he was going after a weapon of some type." Lindsey stated that not only did he fear for his own safety, but also the safety of White and other officers at the scene. He had previously testified he never visualized anything which would indicate the suspect was carrying or holding a weapon.

---

**5.** Lindsey stated that when he exited his vehicle he "beaded down" on the silhouette of the suspect as he had been trained to do. Lindsey thought the shot had missed the suspect, because the suspect again turned back toward the fence.

White testified that as he came through the spur off Mattawoman–Beantown Road onto Route 5, Lindsey pulled out in front of the Pinto. He heard what sounded like a gunshot. He then saw the Pinto increase its speed in what appeared to him to be an attempt to ram Lindsey's vehicle. White announced over the radio, "is he shooting at you or are you shooting at him?" He further testified that he was unsure as to the exact language used in this transmission. He also testified that he stated over the police radio, "to watch out, he is going to try to ram you."

As to the incident at the school, White testified that as Lindsey fired the shot he hit the ground and did not refocus his attention on the suspect until he had gotten back up off of the ground. He did not clearly observe the suspect at the time of the incident. White estimated Lindsey was at least 20 feet away from the suspect at the time the shot was fired. It is significant to note that White did not carry a revolver in attempting to apprehend the suspect. White did not feel threatened because "I could see both of his hands and I was able to see that he didn't have anything in his hands at that time." White never viewed the suspect's hands lower than the top rail of the six foot fence.

Appleby, another officer on the scene, testified that he observed the suspect vehicle during the course of the chase up Mattawoman–Beantown Road attempt to strike Lindsey's vehicle. He also observed the suspect vehicle attempt to strike Lindsey's vehicle on Route 5. Appleby went on to testify that when they reached the rear of the high school and as his vehicle came to a stop, he observed the suspect getting out of his vehicle and heard someone saying freeze or stop. He observed the suspect going up to the fence, jumping on to the fence, falling back down off of the fence, pulling his hands down, and turning in the direction of his vehicle and towards Lindsey. At that instant, he glanced down to unhook his seatbelt when he heard the gunshot. Appleby further testified he could not clearly see the suspect at the time of the shooting because of darkness. Appleby stated, however, he observed the suspect's hands

were about chest high and his elbows were against his body. He did not see a weapon.

The defense also called Tfc. Williamson (Williamson). He testified that at the time of the incident he was listening to the radio transmissions of his fellow troopers in connection with the chase. Williamson heard White say that the suspect was shooting at Lindsey and left his position to render assistance in the chase. Williamson further testified that when he arrived on the scene Lindsey was upset and kept repeating that he heard over the radio that they were shooting at him and he thought the man had a gun.

In finding Lindsey guilty of the second charge, the Board concluded:

> [T]he Board finds by a preponderance of evidence, that on December 19, 1985, Tfc. M.W. Lindsey fired a shot from his service revolver at an unarmed suspect with his hands raised. We feel Tfc. Lindsey may have felt he was in danger; however, we feel his fears were not reasonable due to the following facts: There was much confusion as to what was said over the police radio during the chase in regard to gunshots and to their location of occurrence.... Testimony from Tfc. White indicated that he had no fear for his life and was attempting to apprehend Morris without his weapon drawn. Two of the witnesses testified that during the time immediately before Tfc. Lindsey fired, Morris did not bring his hands below his shoulders which would pose less of a threat and could possibly have been an act of submission.

The Board separately found Lindsey not guilty of using excessive force under Chapter 28, Section III, Subsection 2-1, reasoning, "there was no evidence that Lindsey was attempting to prevent an escape. All evidence hinged on protecting himself from harm."

The standard of review of the Maryland State Police Hearing Board's decision is set forth in the Maryland Administrative Procedure Act. Maryland Code (1984), State

Government Article, § 10–215. Subsection (g)(3) provides that the reviewing court may:

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted;

(vi) is arbitrary or capricious.

█ In our assessment of whether the Board's decision is supported by substantial evidence, we traditionally apply the rule that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State Election Bd. v. Billhimer*, 314 Md. 46, 58, 548 A.2d 819, 825 (1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989); *Supervisor v. Group Health Ass'n*, 308 Md. 151, 159, 517 A.2d 1076, 1080 (1986); *Bulluck v. Pelham Woods Apartments*, 283 Md. 505, 512–13, 390 A.2d 1119, 1123 (1978); *Snowden v. Mayor & C.C. of Balto.*, 224 Md. 443, 448, 168 A.2d 390, 392 (1961). As otherwise stated, the scope of review "is limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Bullock, supra*, 283 Md. at 512, 390 A.2d at 1123–24.

█ In applying the substantial evidence test, we do not substitute our judgment for the expertise of the agency. *State Election Bd., supra; Supervisor of Assessments of Montgomery County v. Asbury Methodist Home, Inc.*, 313 Md. 614, 626–27, 547 A.2d 190, 195–96 (1988); *Motor Vehicle Admin. v. Lindsay*, 309 Md. 557, 564, 525 A.2d 1051, 1054 (1987); *Supervisor, supra; Bernstein v. Real Estate Comm.*, 221 Md. 221, 230, 156 A.2d 657, 661–62 (1959),

*appeal dismissed,* 363 U.S. 419, 80 S.Ct. 1257, 4 L.Ed.2d 1515 (1960). We also must review the agency's decision in a light most favorable to the agency, since "decisions of administrative agencies are prima facie correct," *Bulluck, supra,* 283 Md. at 513, 390 A.2d at 1124; *Hoyt v. Police Comm'r,* 279 Md. 74, 88–9, 367 A.2d 924, 932 (1977), and "carry with them the presumption of validity." *Bullock, supra; Dickinson–Tidewater, Inc. v. Supervisor,* 273 Md. 245, 256, 329 A.2d 18, 25 (1974); *Heaps v. Cobb,* 185 Md. 372, 378–9, 45 A.2d 73, 76 (1945).

*Billhimer* further described the substantial evidence test as follows:

> [T]he test is a deferential one, requiring 'restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions,' *Asbury Methodist, supra,* 313 Md. at 625, 547 A.2d at 195; *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 309–10, 236 A.2d 282, 289 (1967). This deference applies not only to agency fact-finding, but to the drawing of inferences from the facts as well. *St. Leonard Shores Joint Ven. v. Supervisor,* 307 Md. 441, 447, 514 A.2d 1215, 1218 (1986); *Bulluck, supra,* 283 Md. at 513, 390 A.2d at 1124; *Snowden, supra,* 224 Md. at 448, 168 A.2d at 392. When, however, the agency's decision is predicated solely on an error of law, no deference is appropriate and the reviewing court may substitute its judgment for that of the agency. *Washington Nat'l Arena v. Comptroller,* 308 Md. 370, 378–79, 519 A.2d 1277, 1281–82 (1987); *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834–36, 490 A.2d 1296, 1301–02 (1985). In brief, so long as the agency's decision is not predicated solely on an error of law, we will not overturn it if a reasoning mind could reasonably have reached the conclusion reached by the agency.

314 Md. at 58, 548 A.2d at 826.

■ We conclude the Court of Special Appeals misapplied the substantial evidence test in this case. The finding of guilt on the firearm charge (Subsection 2–4a.(3)) is supported by "such relevant evidence as a reasonable mind

might accept as adequate." The Board's decision was not predicated on an error of law but was rather based upon an interpretation of the facts and the inferences drawn therefrom. The Board's judgment and expertise as to the impropriety of Lindsey's use of a firearm must be given great deference.

The Court of Special Appeals focused on two points in reaching its conclusion: 1) the Board failed to make a finding of fact of whether the suspect was a misdemeanant and that Lindsey reasonably knew that the violator was a misdemeanant; 2) that the Board's verdict was inconsistent with the finding of not guilty on another charge. The intermediate appellate court's analysis on both points is erroneous. Its analysis represents one possible evaluation of the facts and inferences contained in the record, but certainly is not the only reasonable interpretation. It was the responsibility of the Board to resolve any conflicting inferences arising from the factual record. The Court of Special Appeals improperly substituted its judgment of the merits of the charges in place of the Board's final conclusion. In order to conclude there was an inconsistency in the Board's findings, the intermediate appellate court necessarily reevaluated the factual record, and applied its judgment of the most reasonable inferences available. We are unpersuaded that the alleged inconsistency in the Board's ruling on the other charges warrants reversal.[6] It follows that the decision of the Board and the judgment of the Circuit Court must be reinstated.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE IS REMANDED TO THE COURT OF SPECIAL APPEALS FOR AN ORDER AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY.

---

**6.** We have reviewed the provisions of the Agency Patrol Manual, particularly Chapters 22 and 28, and find them to be separate and distinct guidelines, designed to be independent provisions applicable to different situations.

COSTS IN THIS COURT AND IN THE COURT OF
SPECIAL APPEALS TO BE PAID BY RESPONDENT.