666 A.2d 511

MOTOR VEHICLE ADMINISTRATION

v.

Lee Daniel KARWACKI.

No. 119 Sept. Term, 1994.

Court of Appeals of Maryland.

Oct. 25, 1995.

Jonathan Acton, II, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Glen Burnie, for petitioner.

No brief on behalf of respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, CHASANOW, BELL and RAKER, JJ., and ROBERT F. FISCHER, J. (Specially Assigned).

BELL, Judge.

The issue this case presents is whether, at a probable cause hearing, held pursuant to Maryland Code (1977, 1992 Repl. Vol., 1994 Cum.Supp.), § 16–205.1(f)(7), of the Transportation Article, an administrative law judge ("ALJ") may give greater credit to the sworn written statement of an absent police officer, who was not subpoenaed by either party, than to the conflicting testimony of the motorist. This ruling is precisely that which the ALJ made in suspending the driving privileges of Lee Daniel Karwacki, the respondent, for a second refusal to take an alcohol concentration test. *See* § 16–205.1(b)(1)(i)(2)(B). The Circuit Court for Baltimore City, to which the appellee turned for judicial review, disagreed with the ALJ's decision, more precisely with the process by which it was made, and so, reversed the decision of the ALJ.[1] The

---

[1]. The Motor Vehicle Administration is empowered to delegate "to the Office of Administrative Hearings the power and authority under the Maryland Vehicle Law to render final decisions in hearings conducted under ... Title 16, Subtitles 1 through 4 of this article." Maryland Code (1977, 1992 Repl.Vol.) § 12–104(e)(2) of the Transportation Article. The Administration has chosen that option. *See* Md.Regs.Code tit.

Motor Vehicle Administration (MVA), the petitioner, timely filed a petition for certiorari, pursuant to Maryland Code (1984, 1995 Repl.Vol.) § 12–305 of the Courts and Judicial Proceedings Article,[2] which we granted. We shall reverse the judgment of the circuit court.

## I

The respondent was stopped and detained by a Baltimore City Police Officer after he was observed driving through a red light. During the stop and detention, the officer made certain observations which led the officer reasonably to believe that the respondent had been driving while intoxicated. Therefore, the officer noted these observations, in writing and under oath, on form DR–15A, "Officer Certification and Order of Suspension." On that form, he also certified that he complied with § 16–205.1(b)(2).[3] That certification was that,

11, § 11.11.02.08 (1992) (COMAR). An ALJ is a part of the Office of Administrative Hearings. *See* Maryland Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.) § 9–1605 of the State Government Article.

**2.** Maryland Code (1984, 1995 Repl.Vol.), § 12–305 of the Courts and Judicial Proceedings Article provides:

The Court of Appeals shall require by writ of certiorari that a decision be certified to it for review and determination in any case in which a circuit court has rendered a final judgment on appeal from the District Court or has rendered a final judgment on appeal from an administrative decision under Title 16 of the Transportation Article if it appears to the Court of Appeals, upon petition of a party that:
(1) Review is necessary to secure uniformity of decision, as where the same statute has been construed differently by two or more judges; or
(2) There are other special circumstances rendering it desirable and in the public interest that the decision be reviewed.

**3.** Maryland Code (1977, 1992 Repl.Vol., 1994 Cum.Supp.) § 16–205.1(b)(2) of the Transportation Article, provides:

(2) Except as provided in subsection (c) of this section, if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while intoxicated, while under the influence of alcohol, while so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while under the influence of a controlled dangerous substance, in violation of an alcohol restriction,

after detaining the respondent, he requested the respondent to take a test to determine alcohol concentration, which the respondent refused, "after being fully advised of sanctions that shall be imposed as provided on the advice of rights form DR–15." Among the advice contained on the latter form is the following:

> By law, any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented with certain limitations, to take a test of breath or a test of blood to determine the alcohol concentration of the person's breath or blood, or a blood test to determine drug or controlled dangerous substance content. * * *
>
> You have the right to refuse to submit to the test. Your refusal shall result in an administrative suspension of your Maryland driver's license or your driving privilege if you are a non-resident. The suspension by the Motor Vehicle Administration shall be 120 days for a first offense and one year for a second or subsequent offense. * * *
>
> If you refuse the test or submit to a test which indicates an alcohol concentration of 0.10 or more, the Motor Vehicle Administration shall be notified, your Maryland driver's license shall be confiscated, an Order of Suspension issued, and a temporary license issued which allows you to continue driving for 45 days or until a hearing is completed, whichever occurs first.

---

or in violation of § 16–813 of this title, and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:
    (i) Detain the person;
    (ii) Request that the person permit a test to be taken;  and
    (iii) Advise the person of the administrative sanctions that shall be imposed for refusal to take the test, including ineligibility for modification of a suspension or issuance of a restrictive license, and for test results indicating an alcohol concentration of 0.10 or more at the time of testing.
Unless otherwise indicated all future references are to the Transportation Article.

Both the respondent and the officer signed the DR–15 form. The respondent's signature on that form certified that:

> I have read or have been read the Advice of Rights for a test and have been advised of administrative sanctions that shall be imposed for: (1) a refusal to take a test; (2) a test result indicating an alcohol concentration of 0.10 or more; or (3) a test result indicating an alcohol concentration of 0.04 or more involving a commercial motor vehicle. I understand that this requested test is in addition to any preliminary tests that were taken.

Form DR–15A serves as the temporary license for a motorist whose driver's license is confiscated for failure to take the alcohol test or failing the test. The respondent received a copy of Form DR–15A, receipt of which he acknowledged by signing the form in the place provided. That form, as previously indicated, contained the officer's certification. An advice of rights advisory similar to that contained on form DR–15 is also included on the back of form DR–15A. It states:

> Refusal to take a test for alcohol or a test for drugs or controlled dangerous substance requested by a police officer will result in the suspension of your Maryland driving privilege for 120 days for a first offense and one year for a second or subsequent offense.

The respondent's signature on the form did not specifically acknowledge either the officer's certification or the advice of rights advisory form.

As permitted by § 16–205.1(f), the respondent requested an administrative hearing to show cause why his driver's license or privilege should not be suspended for refusal to take an alcohol concentration test as requested.[4] Neither he nor the

---

4. Section 16–205.1(f)(7)(i) sets out the issues to be decided at the hearing:

> 1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while intoxicated, while under the influence of alcohol, while so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could

MVA subpoenaed the police officer. Consequently, when the hearing ultimately was held, the only persons present, other than the ALJ, were the respondent and his counsel.

The ALJ placed into evidence, as relevant to the hearing, Form DR–15A and Form DR–15. In addition, because the respondent previously had refused to take an alcohol test, for which his license had been suspended for 120 days, the record of that prior refusal and suspension was also placed into evidence.

Testifying at the hearing, the respondent acknowledged that the officer requested that he take a test and advised him that he could refuse the test. Contrary to the officer's certification, however, he testified that he was told that, as a consequence of refusal, "[m]y license would be automatically—taken from me for 120 days." The respondent denied that the officer told him what the consequences of a second refusal were. He stated further that had he been told that his license could be suspended for one year, he would have taken the test. The respondent also testified that he did not read either of the forms he signed and he did not believe that the officer had read them to him. Finally, the respondent asserted that he had no recollection of the officer advising him of the conse-

---

not drive a vehicle safely, while under the influence of a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title;

2. Whether there was evidence of the use by the person of alcohol, any drug, any combination of drugs, a combination of one or more drugs and alcohol, or a controlled dangerous substance;

3. Whether the police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who refuses to take the test is ineligible for modification of a suspension or issuance of a restrictive license;

4. Whether the person refused to take the test;

5. Whether the person drove or attempted to drive a motor vehicle while having an alcohol concentration of 0.10 or more at the time of testing; or

6. If the hearing involves disqualification of a commercial driver's license, whether the person was operating a commercial motor vehicle.

quences of failure of the alcohol test, *i.e.,* taking the test and getting a high reading.

Perceiving the issue to be one of credibility, the ALJ ruled against the respondent and ordered his license suspended for one year. He found the certification of the officer to be more credible than the recollection of the respondent. He explained:

You have your recollection that it wasn't done, we do have the signatures on here, I'm finding that the—I find the certification more persuasive in that—more persuasive [than] your recollection again, primarily due to looking at the description, dazed, confused, staggering, unable to balance on one leg stand, I don't think a person in this condition is a reliable witness if everything else is—on the other side is correct. Again, if we had errors on the officer's part, it looked like short cutting I'd say well, maybe we have a dispute here. But we're looking at, again, recollection of a person that is not particularly a reliable witness at the time versus someone—there's no evidence that they were under any influence. So I'm going to find that the Advice of Rights were given which would mean that petitioner is subject to this Section, 16–205.1.

In his findings of fact, the ALJ concluded that the: "officer's certification is more persuasive than petitioner's recollection—especially due to the described condition at the time of petitioner."

The respondent sought judicial review in the Circuit Court for Baltimore City. That court reversed the decision of the ALJ, finding it to be arbitrary and capricious and unsupported by competent and material evidence in light of the entire evidence.[5] Relying on *Bruno v. State,* 332 Md. 673, 632 A.2d

---

5. Maryland Code (1984, 1993 Repl.Vol., 1994 Cum.Supp.), § 10–222(h) of the State Government Article provides, in pertinent part:

1192 (1993) and *Barnes v. State*, 31 Md.App. 25, 354 A.2d 499 (1976), the court reasoned:

That the Administrative Law Judge made certain determinations of reliability/credibility without any factors apparent from the record which would have enabled a proper determination of credibility ... in that the officer did not appear and only the DR–15 and the certification was introduced as allowed by law.... Notwithstanding the fact that the licensee did in fact testify in open court and denied being advised ... that his license would be suspended for one year if there was more than one prior refusal.

### III

The respondent does not challenge the aspect of the officer's certification that relates to the grounds on which the officer stopped him or the sufficiency of the evidence of his alcohol use. The respondent's only challenge is as to the sufficiency of the advice he was given with respect to the consequences of his refusal to take an alcohol test, that he, a second offender, was never fully apprised of the length of the suspension that would occur should he again refuse to take an alcohol test. Thus, the only issue before the ALJ was whether the officer "fully advised" the respondent of the consequences of his second refusal to take a test for alcohol. That determination was a factual one. To make that determination, the ALJ had to evaluate the respondent's testimony and assess its credibility in relation to the documentary evidence already admitted

---

In a proceeding under this section, the court may:

\*     \*     \*     \*     \*     \*

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion or decision:

  (i) is unconstitutional;

  (ii) exceeds the statutory authority or jurisdiction of the final decision maker;

  (iii) results from an unlawful procedure;

  (iv) is affected by any other error of law;

  (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

  (vi) is arbitrary or capricious.

into evidence. He had, in other words, to consider whether the officer's certification that he had complied with § 16–205.1(b)(2), taking into account the respondent's contradictory or conflicting testimony, constituted sufficient evidence on which to conclude that the respondent had been fully advised, as required by the implied consent law.

It is well-settled in this State that it is the function of an administrative agency to make factual findings and to draw inferences from the facts found. *Maryland State Police v. Lindsey*, 318 Md. 325, 334, 568 A.2d 29, 33 (1990), *Caucus v. Maryland Securities*, 320 Md. 313, 324, 577 A.2d 783, 788 (1990). Moreover, the scope of judicial review of an agency's factual determinations is extremely narrow. *Liberty Nursing Center v. Department of Health and Mental Hygiene*, 330 Md. 433, 442, 624 A.2d 941, 945 (1993). A reviewing court must defer to the agency's factual findings and inferences that are supported by substantial evidence. *United Parcel v. People's Counsel*, 336 Md. 569, 577, 650 A.2d 226, 230 (1994); *Caucus*, 320 Md. at 324, 577 A.2d at 788; *Lindsey*, 318 Md. at 334, 568 A.2d at 33. In other words, a reviewing court evaluates the administrative agency's fact finding results; it does not make an independent, *de novo* assessment of the evidence. *Zeitschel v. Board of Education*, 274 Md. 69, 82, 332 A.2d 906, 913 (1975). If there is any substantial evidence in the record to support an agency's factual determinations, the reviewing court must affirm the agency's decision, which on its face is correct, and presumed to be valid. *Liberty Nursing Ctr.*, *supra*, 330 Md. at 442, 624 A.2d at 945; *Anderson v. Department of Public Safety*, 330 Md. 187, 212, 623 A.2d 198, 210 (1993); *Department of Health and Mental Hygiene v. Shrieves*, 100 Md.App. 283, 302, 641 A.2d 899, 908 (1994). For purposes of determining whether an administrative agency's decision is supported by substantial evidence in the record, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Caucus*, 320 Md. at 324, 577 A.2d at 788. *See also Liberty Nursing*, *supra*, 330 Md. at 442, 624 A.2d at 945; *State Election Board v. Billhimer*, 314 Md. 46, 58, 548 A.2d

819, 825 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989); *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978); *Supervisor of Assessments v. Peter & John Radio Fellowship, Inc.,* 274 Md. 353, 355–56, 335 A.2d 93, 94 (1975); *Dickinson–Tidewater Inc. v. Supervisor of Assessments,* 273 Md. 245, 256, 329 A.2d 18, 25 (1974); *Snowden v. Mayor & City Council of Baltimore,* 224 Md. 443, 448, 168 A.2d 390, 392 (1961).

Under the implied consent law, prerequisite to the applicability of administrative sanctions for refusal to submit to a test for alcohol concentration or failing such a test, *i.e.* achieving a result of 0.10 or more at the time of testing, *see* § 16–205.1(b)(1)(i), the driver must have been requested to take an alcohol test and advised of the administrative sanctions "that shall be imposed" for refusal or failure. Section 16–205.1(b). If the driver does not request an administrative hearing, the sanctions applicable shall be imposed "on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.10 or more. . . ." Section 16–205.1(b)(1). In the event that the driver requests an administrative hearing, the imposition of the sanctions is postponed until the factual findings required by § 16.205.1(f)(7)(i) have been made. One of the factual determinations required to be made by that section is whether the test was requested "after the person was fully advised of the administrative sanctions that shall be imposed" for a refusal or a test failure. Section 16–205.1(f)(8)(i)(3).

■ The respondent, as we have seen, requested an administrative hearing. The evidence bearing on the only contested issue raised by the respondent—the advice the police officer gave the respondent prior to requesting that he take a test for alcohol concentration—consisted of documentary evidence, namely, the police officer's certification and order of suspension and the DR–15 advice of rights form, both signed by the officer, and the respondent's oral testimony.

The certification and order of suspension contained the officer's sworn statement of the reasons the respondent was stopped and detained. In it, the officer also certified that "after being fully advised of sanctions that shall be imposed as provided in the advice of rights form DR–15, [the respondent] refused to take a test to determine alcohol concentration by this officer." The advice of rights form, to which the officer's certification referred, contains a detailed summary of the provisions of the implied consent statute. It was signed by both the police officer and the respondent. More importantly, the respondent's signature acknowledged that he read or had read to him the information in the advice of rights form, that he had been advised of the administrative sanctions that "shall be imposed" for a test refusal or a test failure, and that he refused the test. On the other hand, in his testimony, the respondent, denied that he had been fully advised of the administrative sanctions that would be imposed for a test refusal. More particularly, he testified that the officer did not advise him as to the consequences of a second refusal of an alcohol concentration test or for failing such test.

The sworn statement of the arresting officer is *prima facie* evidence of a test refusal. Section 16–205.1(f)(7)(ii). *See Motor Vehicle Administration v. Vermeersch*, 331 Md. 188, 193, 626 A.2d 972, 975 (1993). Moreover, in *Forman v. Motor Vehicle Administration*, 332 Md. 201, 218, 630 A.2d 753, 762 (1993), this Court explicitly held that the advice of rights form "accurately and adequately conveys to the driver the rights granted by the [implied consent] statute." *See also Motor Vehicle Administration v. Chamberlain*, 326 Md. 306, 604 A.2d 919 (1992) and *Hare v. Motor Vehicle Administration*, 326 Md. 296, 604 A.2d 914 (1992), in neither of which was the advice gleaned from the DR–15 form questioned as not providing full advice of administrative sanctions that shall be imposed. The respondent apparently does not challenge that the sworn statement of the officer provided *prima facie* evidence

of the test refusal. He neither objected to its admission into evidence, nor has he ever made a contrary argument.[6]

█ Being *prima facie* evidence of a test refusal, the sworn statement of the officer, unless explained or contradicted, was sufficient to establish that the respondent refused to take an alcohol concentration test. *Prima facie* evidence is

> [e]vidence good and sufficient on its face. Such evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient. Evidence which, if unexplained or uncontradicted, is sufficient to sustain a judgment in favor of the issue which it supports, but which may be contradicted by other evidence.

Black's Law Dictionary 1190 (6th Ed.1990). In *Stanley v. State*, 313 Md. 50, 60, 542 A.2d 1267, 1271 (1988), this Court noted that while " '*prima facie* case', [in some contexts] 'may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue,' in the Title VII context (and by implication, the *Batson* [*v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) ] context), the phrase denotes 'the establishment of a legally mandatory, rebuttable presumption.' " *Stanley*, 313 Md. at 60, 542 A.2d at 1272 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 n. 7, 101 S.Ct. 1089, 1094 n. 7, 67 L.Ed.2d 207, 216 n. 7). *Prima facie* evidence may be overcome by other evidence, whether documentary or testimonial, which rebuts or contradicts it. But whether evidence offered to rebut or contradict the *prima facie* evidence actually does so is a matter for the trier of fact to determine.

█ In this case, the trier of fact is the ALJ, whose function it is to resolve conflicting evidence and, where inconsistent inferences may be drawn from the same evidence, to draw the appropriate inference. *See Board of Education v.*

---

6. The respondent has not appeared either by brief or argument in the proceeding in this Court.

*Paynter,* 303 Md. 22, 35, 491 A.2d 1186, 1192 (1985); *Baltimore Lutheran High School v. Employment Security Administration,* 302 Md. 649, 662, 490 A.2d 701, 708 (1985). Often the resolution of conflicting evidence and inconsistent inferences involves making credibility determinations. In this area, as well, it is no less true that the reviewing court may not substitute its judgment for that of the agency. *See Baltimore Lutheran, supra,* 302 Md. at 662, 490 A.2d at 701; *Board of Education v. Waeldner,* 298 Md. 354, 363, 470 A.2d 332, 336 (1984); *O'Donnell v. Bassler,* 289 Md. 501, 509, 425 A.2d 1003, 1008 (1981); *Resetar v. State Board of Education,* 284 Md. 537, 554, 399 A.2d 225, 234 (1979). Indeed, in *Anderson v. Department of Public Safety, supra* 330 Md. at 217, 623 A.2d at 212, this Court made clear that, in an administrative proceeding, credibility findings of the agency representative who sees and hears witnesses are entitled to great deference on further agency review and should not be reversed absent an adequate explanation of the grounds for the reviewing body's disagreement with those findings.

The respondent's testimony was intended to rebut and contradict the officer's sworn statement as to the advice he gave the respondent. Indeed, had the ALJ found the respondent's testimony reliable, *i.e.* he believed the respondent's testimony, then the sufficiency of the evidence as to the adequacy of the advice that the officer gave the respondent would have been undermined and the sworn statement no longer would have been sufficient to establish the fact that the respondent refused the test. The ALJ did not find the respondent's testimony to be reliable, however. Instead, he considered that the documentary evidence was more persuasive.

Undoubtedly, it is that reference to the credibility of the documentary evidence that prompted the issue this case presents. The only issue before the ALJ involving a credibility determination was the evaluation of the respondent's testimony to determine whether it successfully and adequately rebutted or contradicted the *prima facie* evidence that the respondent refused the test, which already was in the case. Because

the ALJ determined the documentary evidence was more credible than the respondent's testimony, it is absolutely clear that the ALJ did not find the respondent's testimony to be sufficient to negate the fact the officer's sworn statement established. Having concluded that the respondent's testimony did not rebut the officer's sworn statement that the respondent refused the test after having been fully advised, the ALJ set forth the basis for those conclusions, as he was required to do. *See* § 12–208(b) of the Transportation Article;[7] *Forman*, 332 Md. at 219–22, 630 A.2d at 756; *Harford County v. Preston*, 322 Md. 493, 505, 588 A.2d 772, 778 (1991); *Motor Vehicle Administration v. Mohler*, 318 Md. 219, 230, 567 A.2d 929, 935 (1990). *See also* Maryland Code (1957, 1993 Repl. Vol., 1994 Cum.Supp.) § 10–221(b) of the State Government Article, the Administrative Procedure Act. The ALJ explained: "the officer's certification is more persuasive than the petitioner's recollection—especially due to the described condition at the time of petitioner."

■ We hold that the officer's sworn statement provides adequate support for the ALJ's conclusion that the respondent was fully advised of the consequences of a test refusal, notwithstanding testimony from the respondent to the contrary. Hearsay evidence, if reliable, is admissible in an administrative proceeding and, thus, may support an administrative decision. *Maryland Department of Human Resources v. Bo Peep Day Nursery*, 317 Md. 573, 589, 565 A.2d 1015, 1023 (1989); *Redding v. Board of County Commissioners for Prince George's County*, 263 Md. 94, 110, 282 A.2d 136, 145 (1971); *Tauber v. County Board of Appeals for Montgomery County*, 257 Md. 202, 213, 262 A.2d 513, 518 (1970); *Eger v. Stone*, 253 Md. 533, 542, 253 A.2d 372, 377 (1969).

---

7. Section 12–208(b) provides:
   *Manner and notice of adverse decision.*—If a decision or order of the Administration is adverse to any party to the hearing, the decision or order: (1) Shall be made in accordance with § 10–221 of the State Government Article.

This is consistent with the result reached by other courts considering this or a related issue. *See, e.g., Snelgrove v. Department of Motor Vehicles,* 194 Cal.App.3d 1364, 240 Cal. Rptr. 281, 282 (1987) ("We hold ... that the 'sworn statement' executed by an arresting officer in a drunk driving stop can supply sufficient proof, in a formal administrative hearing ... to suspend or revoke the arrestee's license ... even though the officer does not personally testify and the arrestee offers contrary proof."); *Burkhart v. Department of Motor Vehicles,* 124 Cal.App.3d 99, 177 Cal.Rptr. 175, 182–83 (1981) (same); *People v. Hawkins,* 221 Ill.App.3d 460, 164 Ill.Dec. 35, 38–39, 582 N.E.2d 243, 246–47 (1991) (where burden on defendant to present *prima facie* case to require rescission of license suspension, "in considering whether the testimony presented by the motorist constitutes a *prima facie* case, the burden of proof will shift to the State only if the trial court finds such testimony credible."); *People v. Burke,* 220 Ill.App.3d 839, 163 Ill.Dec. 353, 357–58, 581 N.E.2d 304, 308–09 (1991) (same); *Gray v. Adduci,* 73 N.Y.2d 741, 536 N.Y.S.2d 40, 41–42, 532 N.E.2d 1268, 1269 (1988) (sworn statement of officer was substantial evidence " 'adequate to support a conclusion of ultimate fact' "); *Department of Revenue and Taxation v. Hull,* 751 P.2d 351, 356 (Wyo.1988) (officer's sworn statement sufficient "substantial evidence and justification" to sustain order of suspension).

## IV

As mentioned previously, the circuit court's ruling was premised upon two criminal cases, *Bruno v. State,* 332 Md. 673, 632 A.2d 1192 (1993) and *Barnes v. State,* 31 Md.App. 25, 354 A.2d 499 (1976). Specifically, the court focused on their discussion with respect to the difference between an agreed statement of facts and stipulated evidence and the difficulty of assessing credibility where the parties have stipulated to conflicting evidence. *See Bruno,* 332 Md. at 689–90, 632 A.2d at 1193; *Barnes,* 31 Md.App. at 35–36, 354 A.2d at 505–06. Each opinion made clear that, where the parties stipulate to conflicting evidence, "there must be some basis on which to

judge the credibility of the witness whose testimony is the subject of the stipulation, or to ascertain the reliability of that testimony, to the end that the evidence obtained by stipulation may be weighed against other relevant evidence adduced. . . ." *Bruno,* 332 Md. at 690, 632 A.2d at 1192 (quoting *Barnes,* 31 Md.App. at 35, 354 A.2d at 505–06). Because the circuit court is undoubtedly correct, there is no distinction between credibility determinations, whether made in a civil or criminal case or even in an administrative agency hearing, there must be some other basis for distinguishing those cases from this one. That basis is clear; in both *Bruno* and *Barnes,* the stipulation constituted the sole evidence on the basis of which the case was to be decided. In this case, by contrast, there is documentary evidence, *i.e.* the officer's sworn statement, that counterbalances the respondent's testimony and, more important, supports the ALJ's decision.

There are other flaws in the circuit court's analysis. The circuit court apparently assumed the inherent credibility of the respondent's testimony; it treated the respondent's testimony as if the trier of fact must have accepted it, no matter what its content, or plausibility, or how it was delivered. At the same time, the circuit court presupposed the inherent unreliability of the documentary evidence; it gave no effect whatsoever to the fact that the documentary evidence in that case was admissible and probative, on the point for which it was offered. Neither assumption is accurate. Given, as we have seen, that the officer's sworn statement, being *prima facie* evidence of a test refusal, was both admissible and probative, and that the ALJ actually did assess the credibility of the respondent's testimony on the basis of that testimony, there simply was no difficult credibility conflict to be resolved.

## V

*Forman,* like *Barnes* and *Bruno,* is not controlling in this case. The respondent did not subpoena the arresting officer and, consequently, did not proffer what the officer's testimony would have been had he been called to testify. *See* Md.Regs.

Code tit. 11, § 11.11.03.07A(5), (1992) (COMAR).[8] The peti-
tioner in *Forman* subpoenaed the arresting officer, proffering
what he expected the officer's testimony would be. The
decision whether to issue that subpoena was deferred by the
ALJ until the administrative hearing. At that hearing, the
petitioner testified consistent with the proffer previously
made. The administrative law judge both refused to issue the
subpoena and rejected the petitioner's testimony. It was the
petitioner's position that, although she had been fully advised
of the consequences of a test refusal, the arresting officer had
subsequently negated that advice by leading her to believe
that the applicable period of suspension was not mandatory,
but, in fact, could be modified by the MVA after the hearing
and had otherwise induced her to refuse the test. This Court
reversed the judgment of the circuit court which had affirmed
the ALJ's decision and remanded the case for further proceed-
ings. We pointed out that the ALJ had not resolved the
conflicts in the evidence, namely whether, subsequent to fully
advising the petitioner of the consequences of a test refusal,
the officer had subsequently negated that advice and other-
wise induced the test refusal. As to those issues, the ALJ
made no findings at all. We also commented on the ALJ's
denial of the petitioner's subpoena request:

> We can say that when faced with a licensee's proffer and
> subpoena request, an ALJ has three distinct choices: (1)
> accept the proffer's contents as true, and indicate this
> acceptance; (2) reach no conclusion regarding the truth of
> the proffer (essentially suspending judgment), and issue the

---

8. § 11.11.03.07A. provides:
   A. A request for the issuance of a subpoena to require the attend-
   ance of witnesses or the production of documents shall be in writing
   and shall contain:
   (1) The name and complete mailing address of the licensee;
   (2) The driver's license number of the licensee;
   (3) The date of the scheduled hearing, if known;
   (4) The name, address, and telephone number of attorney, if appli-
   cable;
   (5) A proffer of the expected testimony or evidence and its rele-
   vance to the proceeding; and
   (6) The name and address of the requested witness.

subpoena; or (3) reject the proffer and subpoena request entirely, and provide a valid explanation of the rejection. This third option enables the ALJ to dispose of frivolous or otherwise improper subpoena requests. We emphasize that the ALJ may only avoid issuing the subpoena when he or she explicitly accepts the proffer or rejects the proffer and provides a basis for this rejection.

332 Md. at 222, 630 A.2d at 756. Because, in that case, the proffered evidence met both the statutory and regulatory standards, *i.e.* it pertained to a genuine issue in the contested case, and no valid reason was given for excluding the evidence, the Court concluded that "if the ALJ did not accept the proffer as to the officer's advice of rights, he should have issued the subpoena to require the detaining officer to testify at the hearing." *Id.* at 224, 630 A.2d at 756. Thus, the ALJ was left with two options on remand, either accept the proffer as true, explicitly noting the same, and then determine whether the proffered statement negated the advice of rights form or otherwise induced the petitioner to refuse the test or, if the ALJ had doubts about the accuracy of the proffer, issue the subpoena.

In the instant case, by not subpoenaing the arresting officer and offering only his sworn testimony, directly conflicting the arresting officer's sworn statement on a critical point, the respondent presented the ALJ with an all or nothing choice. Either the ALJ must accept his testimony, in which case the *prima facie* evidence of the officer's sworn statement would be rebutted, or he must reject it and leave the *prima facie* evidence intact. The ALJ did the latter. Clearly, under this scenario, the ALJ was under no obligation to believe the respondent. Nor, in the absence of a request to do so, was he obliged even to consider whether to subpoena the arresting officer.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REINSTATE THE DECISION OF THE MVA. COSTS TO BE PAID BY THE RESPONDENT.*

FISCHER, Judge, dissenting.

Because I disagree with a fundamental premise of the majority opinion, I must respectfully dissent. The majority opinion is in direct conflict with the wording of Md.Code (1977, 1995 Repl.Vol.), § 16–205.1 of the Transportation Article, as well as the cases of *Bruno v. State*, 332 Md. 673, 632 A.2d 1192 (1993) and *Barnes v. State*, 31 Md.App. 25, 354 A.2d 499 (1976).

The majority understands the importance of *Barnes* and *Bruno* in that it recognized "there must be some other basis for distinguishing those cases from this one." The majority opinion goes on to state, "That basis is clear; in both the *Barnes* and *Bruno* cases, the stipulation constituted the sole evidence on the basis of which the case was to be decided. In this case, by contrast, there is documentary evidence, *i.e.* the officer's sworn statement, that counterbalances the respondent's testimony and, more important, supports the ALJ's decision." Majority Op. (at 287). In my opinion, there is no contrast. With respect to resolving the issue in this case, the officer's sworn statement has no greater evidentiary value than the stipulations found inadequate in *Barnes* and *Bruno*.

The majority's effort to distinguish this case from *Barnes* and *Bruno* is inconsistent with existing Maryland case law. This inconsistency is illustrated by the difference between an agreement on a statement of facts, on one hand, and a stipulation of evidence, on the other. In *Barnes*, Chief Judge Orth explained the difference between the two. 31 Md.App. at 35–36, 354 A.2d at 505–506; *See Bruno*, 332 Md. at 689–690, 632 A.2d at 1200–1201 (incorporating Chief Judge Orth's definition). In describing a stipulation of evidence, Chief Judge Orth wrote:

> On the other hand, when evidence is offered by way of stipulation, there is no agreement as to the facts which the evidence seeks to establish. Such a stipulation only goes to the content of the testimony of a particular witness if he were to appear and testify. The agreement is to what the evidence will be, not to what the facts are. Thus, the

evidence adduced by such a stipulation may well be in conflict with other evidence received. For the trier of fact to determine the ultimate facts on such conflicting evidence, there must be some basis on which to judge the credibility of the witness whose testimony is the subject of the stipulation, or to ascertain the reliability of that testimony to the end that the evidence obtained by stipulation may be weighed against other relevant evidence adduced. It is in this frame of reference that Rule 1086 speaks of giving due regard to the 'opportunity' of the lower court to judge the credibility of the witnesses.

*Id.* at 35, 354 A.2d at 505–506. Maryland courts have recognized a problem arises when a fact finder has no opportunity to judge the credibility of witnesses. In *Barnes*, Chief Judge Orth explained, "Without such opportunity, there was no proper way to resolve the evidentiary conflicts in order to determine ultimate facts which would be sufficient in law to sustain a verdict of guilty." *Id.* at 36, 354 A.2d at 506.

In the case *sub judice,* the Administrative Law Judge (ALJ) had no proper way to resolve the evidentiary conflict between the respondent's live testimony and the officer's written certificate. The evidence offered by the State in the case at bar is of no greater value as evidence than the stipulation of evidence referred to in *Barnes.* The officer's affidavit is simply what his testimony would be if he were present. The only part of the State's evidence that has greater value is the testimony that the respondent refused to take the test. This evidence is given *prima facie* effect by the Statute. That, of course, is not an issue in this case. Respondent freely admits he refused to take the test. It seems incongruous that in *Barnes* the stipulated evidence of one witness was found wanting when opposed to stipulated evidence of another witness but, in the case *sub judice,* the sworn statement of the police officer, which is of no greater evidentiary value than the stipulated evidence in *Barnes,* is sufficient to overcome the sworn live testimony of a citizen. This should not be possible because there is no means by which the ALJ, as the fact finder, could make a credibility determination as to the officer's statement.

Similarly, in *Barnes* there was no way for the fact finder to determine which statement was more credible.

Further, it appears to me that the ALJ erred in basing his credibility determination upon respondent's alleged condition at the time the advice of rights was given. The ALJ stated:

Okay. And—what I'm looking at is of course we have a certification of the officer that he did read this or that it was—that you read it and we do have it signed by both people with a description of the driver being dazed and confused, was staggering, unable to balance on one leg. Obviously, from the description here you weren't really in the best of shape, I'm a little concerned as to your—how reliable your recollection is of an incident or what was, you know read or said to you with that description at 3 o'clock in the morning....

The ALJ used the officer's certification as evidence of respondent's ability to remember. He, accordingly, gave little or no credence to respondent's testimony. It is this bootstrapping approach of the ALJ that particularly disturbs me. He determined the respondent's credibility, or lack thereof, based on the officer's written account of respondent's condition at an earlier time. This decision placed respondent in an impossible position. Regardless of how convincing his testimony at the hearing may have been, it was totally undermined by the ALJ's acceptance of the officer's statement as being correct even though there was no basis for that acceptance. It is this sort of decision making that Chief Judge Orth warned against in *Barnes*.

What I believe the majority overlooks is that the *prima facie* effect of Section 16–205.1 is very limited. Section 16–205.1(f)(7)(ii) provides, "The sworn statement of the police officer and of the test technician or analyst shall be *prima facie* evidence of a *test refusal or a test resulting in an alcohol concentration of 0.1 or more at the time of testing*." (Emphasis added.) Only the refusal to take a test and the test results themselves are given *prima facie* effect by the Statute. *See State v. Patrick*, 312 Md. 482, 487, 540 A.2d 810, 812 (1988)

(stating that courts may not insert words into a statute to express an intention not evident in its original form).

In this case, the respondent's blood alcohol level was not an issue, and the fact that the respondent refused to take the test was uncontroverted. The only issue is the extent of the advice given by the officer, to the respondent, as to penalties for second offenders. I submit there is nothing in the Statute that gives *prima facie* effect to the officer's certification that he properly advised the respondent. The issue as to whether the officer specifically advised the respondent is, of course, of the utmost importance. Section 16–205.1(b)(2)(iii) requires that if a police officer stops or detains any person, who the officer has reasonable grounds to believe is driving while intoxicated or under the influence of alcohol, the police officer shall, *inter alia*, "[a]dvise the person of the administrative sanctions that shall be imposed for refusal to take the test. . . ." Regardless of the certification (which is pre-printed on the officer's certification form and is automatically part of every certification), in order to impose the one year suspension, the ALJ would need to be persuaded that the officer did, in fact, properly advise the respondent.

Not only does the majority opinion ignore the plain wording of Section 16–205.1(f)(7)(ii), but, in my opinion, its holding goes far beyond the section's Legislative intent. *See Allied Vending, Inc. v. City of Bowie,* 332 Md. 279, 631 A.2d 77 (1993) (stating that the central rule of statutory construction is to carry out the intent of the Legislature and the primary source of this intent is the language of the Statute). Section 16–205.1(f)(7)(ii), in permitting the police certificate to be *prima facie* evidence of a test refusal and test result, alleviates the necessity of having the arresting officer appear in numerous cases wherein the issues are the alcohol content as shown by the test or whether the person charged refused the test. Nowhere in the statute is there any indication that the Legislature intended contested motor vehicle proceedings, such as the one in this case, to be tried on the basis that the police certificate is *prima facie* evidence of all it contains.

When the Legislature intends to give *prima facie* effect to a writing and all its contents, it specifically states so in the Maryland Code. For example, with respect to certifying that a witness is needed in another state, the Legislature wrote, "In the hearing the certificate shall be *prima facie* evidence of all the facts stated therein." Md.Code (1974, 1995 Repl.Vol.), § 9–302(b) of the Cts. & Jud.Proc. Article. In the case *sub judice*, the Legislature's failure to prescribe all the facts of a police certificate *prima facie* effect is, in fact, *prima facie* evidence of its intention to limit the scope of Section 16–205.1(f)(7)(ii).

At oral argument before the circuit court, respondent's counsel averred that the usual practice, when conflicts arise between the testimony and the certificate, is to postpone the hearing so the officer can be subpoenaed. This procedure is consistent with the Statute and the *Barnes* and *Bruno* cases and should have been followed in this case.

For the reasons stated, I would affirm the decision of the circuit court.