Argued and submitted November 13, 1987, reversed and remanded with instructions March 9, 1988

In the Matter of the Suspension of
the Driving Privileges of

**JONES,**
*Respondent,*

*v.*

**MOTOR VEHICLES DIVISION,**
*Appellant.*

(16-86-07627; CA A43461)

750 P2d 1203

Timothy A. Sylwester, Salem, argued the cause for appellant. With him on the brief was Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robert A. Miller, Eugene, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

The state appeals from a circuit court decision reversing Motor Vehicle Division's (MVD) suspension of petitioner's driver's license for "refusing" to submit to a breath test. ORS 813.100(3). The circuit court ruled that there was not substantial evidence that petitioner refused the test, because OAR 257-30-020(1)(c)(F) is ambiguous regarding what constitutes completing the breath test—*i.e.,* whether a printout is required. The only issue is whether petitioner's failure to continue to blow into the Intoxilyzer until a printed result was obtained constitutes a "refusal" under ORS 813.100(3).

Petitioner was arrested for driving under the influence of intoxicants. He stipulates that the officer had reasonable grounds to believe that he had been driving under the influence and that the officer informed him of his rights and consequences pursuant to ORS 813.130 before asking him to submit to a breath test. Petitioner was asked several times to blow into the Intoxilyzer until it would "click" and a final printout could be obtained. Although petitioner's breath registered .18 on the digital display, he repeatedly failed to blow long enough and with sufficient force to produce a printout, despite the officer's warnings that he would record a refusal if petitioner did not oblige. When the officer offered petitioner one final opportunity before recording a refusal, he again blew—but only for a few seconds—and then stopped. There is no evidence that petitioner was physically incapable of completing the test as requested or that the Intoxilyzer was not working.

The officer testified that petitioner was "acting like he was blowing into" the instrument, but "it didn't appear that his cheeks were filling up with air as if he was blowing into the mouthpiece. There was no air heard passing into the tube." Thereupon, the officer told petitioner that he was noting a refusal. Petitioner protested that it was not a refusal and later testified that he felt he had already taken the test and failed, as evidenced by the digital display of .18.

Pertinent statutes and rules do not define the term "refusal" under the Implied Consent Law; however, OAR 257-30-020(1)(c) prescribes the test procedure to be followed

by operators using an Intoxilyzer Model 4011 or 4011A. It provides, in pertinent part:

"(F) Disconnect the Breath Tube from the Pump Tube. Connect a clean mouthpiece to the Breath Tube. Have the subject inhale and then blow into the Breath Tube, giving as long an expiration as possible with the Breath Pressure lamp on for the entire time of the expiration. The numbers on the Digital Display will increase and will level off when the sample cell is filled with an adequate amount of deep lung breath. After a proper sample is given, the sound of the printer will be heard, automatically printing the letter 'B' for breath, plus the first two digits of the display on the Evidence Card. A printout can only occur after the subject stops blowing and the Breath Pressure lamp is extinguished. If the sound of the printer is not heard, indicating that a printout did not occur after the subject stopped blowing into the Breath Tube, and the breath Pressure lamp was extinguished; have him blow again, as many times as necessary, until the sound of the printer is heard. Repeated expirations of the subject's breath into the instrument will not affect the accuracy of the test result.

"(G) Reconnect the Breath Tube to the Pump Tube. Turn the Mode Selector to the 'Air Blank' mode. After the Air Pump automatically shuts off, the sound of the printer should be heard printing the letter 'A' plus the first two digits of the display on the Evidence Card. If the sound of the printer is not heard, indicating that a printout did not occur; repeat Step (C) and again turn the Mode Selector to the 'Air Blank' mode, making sure that the Error light does not glow, and that the sound of the printer is heard after the pump shuts off.

"(H) Remove the Evidence Card from the printer slot and retain as evidence. Record the test result, indicated opposite the letter 'B' on the Evidence Card, on the Operator's Checklist."

When a *proper* sample is given, it is evidenced by the sound of the printer. If the sound of the printer is not heard, the officer is to ask the arrestee to "blow again, as many times as necessary," until the printer is activated and a printout is obtained. Petitioner was provided an adequate opportunity to activate the printer, yet he repeatedly failed to blow long enough and with sufficient force as requested.

Petitioner contends that the digital display alone reflected completion of the test. OAR 257-30-020(1)(c), however, does not provide that the digital display has any independent significance; the rule contemplates that a printed result

is intended. Therefore, we hold that there is substantial evidence to support the hearings officer's finding that petitioner's conduct constituted a "refusal" within the meaning of ORS 813.100(3).

Reversed and remanded with instructions to suspend petitioner's driving privileges for one year, not including any period during which his privileges were reinstated pursuant to the circuit court's judgment.