643 A.2d 442

MOTOR VEHICLE ADMINISTRATION

v.

**Joe Pritchard GADDY.**

**No. 37, Sept. Term, 1994.**

Court of Appeals of Maryland.

June 30, 1994.

Risselle Rosenthal Fleisher, Asst. Atty. Gen., Glen Burnie, J. Joseph Curran, Atty. Gen., Baltimore, for petitioner.

James R. Lupinek, Towson, for respondent.

Submitted to MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

KARWACKI, Judge.

Joe Pritchard Gaddy was operating his automobile on April 22, 1993, when he was stopped by Anne Arundel County Police Officer M. Edmonson. The officer certified that the stop was made because Gaddy's vehicle had made a very wide turn and had crossed the center line several times. After noticing Gaddy's bloodshot eyes, his poor balance, and a strong odor of alcohol on his breath, the officer administered several field

sobriety tests, which Gaddy failed. The officer then advised Gaddy of his rights under Maryland Code (1974, 1992 Repl. Vol., 1993 Cum.Supp.), § 16–205.1 of the Transportation Article [1] and requested that he submit to a test of his breath for alcohol concentration ("a breathalyzer test").[2] Gaddy refused.

As required by the statute, the officer confiscated Gaddy's driver's license, issued him a temporary, 45–day license and forwarded the appropriate documents—including the form "DR–15A" [3]—to the Motor Vehicle Administration (MVA). Gaddy requested a hearing, as was his right under § 16–205.1.

At the administrative hearing, which was held on June 8, 1993, Gaddy objected to the admission of the DR–15A certifi-

---

1. This section constitutes Maryland's "implied consent" and "administrative per se" law against drunk driving. It provides for swift administrative action to suspend the drivers' licenses of drivers who, after a police officer has stated reasonable grounds to believe that the individual is driving under the influence of alcohol, either refuse to take the test or who take the test and are found to have an alcohol concentration of 0.10 or greater. For a more detailed explanation of the provisions and the history of Maryland Code (1974, 1992 Repl.Vol., 1993 Cum.Supp.) § 16–205.1 of the Transportation Article, see *Motor Vehicle Admin. v. Shrader*, 324 Md. 454, 597 A.2d 939 (1991).

2. Maryland Code (1974, 1989 Repl.Vol., 1993 Cum.Supp.) Title 10, Subtitle 3 of Courts Article permits tests of a driver's breath or blood to determine alcohol concentration. Section 10–305(a) provides:

 *"(a) Alcohol content.*—The type of test administered to the defendant to determine alcohol concentration shall be the test of breath except that the test of blood shall be the type of test administered if:

 (1) The defendant is unconscious or otherwise incapable of refusing to take a test to determine alcohol concentration;

 (2) Injuries to the defendant require removal of the defendant to a medical facility; or

 (3) The equipment for administering the test of breath is not available."

3. Motor Vehicle Administration Form DR–15A (9/93) is entitled "Officer's Certification and Order of Suspension." The lower portion of the form is entitled "Certification of Police Officer" and requires the officer (1) to certify that he or she had reasonable grounds to believe that the individual was operating a motor vehicle under the influence of alcohol or any drug, (2) to describe such reasonable grounds, and (3) to certify that the driver was advised of the sanctions that may be imposed under Md.Code (1974, 1992 Repl.Vol., 1993 Cum.Supp.) § 16–205.1 of the Transportation Article and that the driver either refused to take the test

cate. Citing § 16.205.1(f)(7)(ii), he argued that the certificate was not admissible as prima facie evidence that he had refused to take the breathalyzer test because it was not also executed by a "Test Technician or Analyst." The Administrative Law Judge (ALJ) overruled the objection. After no other evidence was offered by the MVA or Gaddy, the ALJ found by a preponderance of the evidence that Gaddy had refused to take the test. Thereafter, the ALJ imposed a 120–day suspension of Gaddy's license pursuant to § 16–205.1.

The MVA granted a stay of the suspension pending judicial review by the Circuit Court for Baltimore County. The circuit court reversed the decision of the ALJ, holding that the certification signed by the arresting officer that Gaddy had refused to take the alcohol concentration test was insufficient to be admitted as evidence under § 16–205.1(f)(7)(ii).

The MVA petitioned this Court for certiorari, asserting that the circuit court's interpretation of the statute is illogical. We have granted the petition, and we shall summarily reverse the judgment of the Circuit Court for Baltimore County and remand the case to that court for the entry of a judgment affirming the order of the MVA.

The issue before us is one of statutory construction. Maryland Code (1974, 1992 Repl.Vol., 1993 Cum.Supp.), § 16–205.1(f)(7)(ii) of the Transportation Article reads:

"**§ 16–205.1. Suspension or disqualification for refusal to submit to chemical tests for intoxication.**

 . . . . .

 (f) *Notice and hearing on refusal to take test; suspension of privilege to drive; disqualification from driving commercial vehicles.*

 . . . . .

---

or tested for an alcohol concentration of 0.10 or higher. Immediately below the officer's certification is a portion entitled "Certification of Test Technician or Analyst" in which an analyst certifies that he or she has performed a test for alcohol concentration and lists the result of the test.

[ (7) ] (ii) The sworn statement of the police officer and of the test technician or analyst shall be prima facie evidence of a test refusal or a test resulting in an alcohol concentration of 0.10 or more at the time of testing."

The circuit court interpreted this statute to require the signatures of both the arresting officer *and* the test technician, even if no test was administered by the technician. The court acknowledged that this section of the statute "is not a paragon of good legislative workmanship and wording," but stated that, if it held otherwise, it would be forced "to ignore the conjunction 'and' so visibly placed in the statute."

In its petition for certiorari, the MVA argues that such a construction of § 16–205.1(f)(7)(ii) leads to an absurd result. Under the circuit court's interpretation, MVA asserts, it would be necessary for a certified test technician or analyst trained to administer and to interpret the results of chemical tests for intoxication to participate in every arrest of a driver whom an officer had reasonable grounds to suspect was impaired by alcohol. Gaddy, on the other hand, contends that the circuit court was correct and that the presence of the conjunctive "and" in the statute requires two signatures on the certification of refusal before the refusal may be admitted as evidence.

 We have stated time and again that the cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Motor Vehicle Admin. v. Shrader,* 324 Md. 454, 462, 597 A.2d 939, 943 (1991); *Taxiera v. Malkus,* 320 Md. 471, 480, 578 A.2d 761, 765 (1990). A statute is to be construed reasonably with reference to the purpose, aim, or policy of the legislature reflected in that statute. *Motor Vehicle Admin. v. Vermeersch,* 331 Md. 188, 194, 626 A.2d 972, 975 (1993); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987). Thus, when a particular statute is part of a statutory scheme, the legislative intent must be discerned from the entire statute, and not from a single part in isolation. *Williams v. State,* 329 Md. 1, 16, 616 A.2d 1275, 1282 (1992); *Shrader,* 324 Md. at 463, 597 A.2d at 943; *Jones v. State,* 311 Md. 398, 405, 535 A.2d 471, 474 (1988).

In any event, as we noted in *Shrader*, "results that are unreasonable, illogical, or inconsistent with common sense should be avoided whenever possible consistent with the statutory language, with the real legislative intention prevailing over the intention indicated by the literal meaning." 324 Md. at 463, 597 A.2d at 943 (quoting *Potter v. Bethesda Fire Dep't*, 309 Md. 347, 353, 524 A.2d 61, 64 (1987), in turn quoting *State v. Fabritz*, 276 Md. 416, 422, 348 A.2d 275, 278 (1975), *cert. denied*, 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976)).

In order to determine whether the legislature intended to require two signatures on the certification of refusal or whether it intended a single signature to suffice, we must look at the specific provision in the context of the statutory scheme. In 1991, this Court reviewed the history of the drunk driving statute in *Motor Vehicle Admin. v. Shrader*. We recognized there that the current § 16–205.1 came about as a result of the findings of the General Assembly's Task Force on Drunk and Drugged Driving. The Task Force had been established in 1988 because "the problem of drunk and drugged driving is of continuing concern to the citizens of the State of Maryland." Joint Resolution No. 15 of the Acts of 1988. The General Assembly subsequently

> "enacted the administrative per se law recommended by the Task Force, rewriting § 16–205.1 of the Transportation Article to allow a person's driver's license to be promptly suspended for suspected drunken driving if the person refused a test for blood alcohol concentration. Ch. 284 of the Acts of 1989 [House Bill 556]."

*Shrader*, 324 Md. at 464, 597 A.2d at 944. The purpose behind the law is readily apparent, as was also noted in *Shrader*:

> "We have consistently recognized that the statutory provisions enacted to enforce the State's fight against drunken driving ... were enacted for the protection of the public and not primarily for the protection of the accused. *State v. Moon*, 291 Md. 463, 477, 436 A.2d 420, 427 (1981); [*State v.*] *Werkheiser*, 299 Md. [529,] 536–37, 474 A.2d [898,] 902 [ (1984) ]. The General Assembly's goal in enacting the

drunk driving laws, as stated by Judge Cole in *Willis v. State*, 302 Md. 363, 488 A.2d 171 (1985), is 'to meet the considerable challenge created by this problem by enacting a series of measures to rid our highways of the drunk driver menace. These measures ... are primarily designed to enhance the ability of prosecutors to deal effectively with the drunk driver problem.' "

*Id.* at 464, 597 A.2d at 943–44. *See also Johnson v. State*, 95 Md.App. 561, 569–70, 622 A.2d 199, 203–04 (1993) (administrative per se law has two-pronged purpose—to deter those who would drive drunk, and to reduce fatalities caused by those drunk drivers who drive while awaiting criminal adjudication).

■ In light of the clear legislative intent and public policy evident in the drunk driving law, it cannot be assumed that the legislature intended to require signatures of both the police officer and a test technician on a certification of a test refusal. The circuit court's conclusion that such a certification is not valid without the attestation of a trained technician who performed no tests and, in all likelihood, never saw the driver, strains common sense. The police officer who initially stops the driver, suspects alcohol misuse, and requests a chemical test is in the better position to attest to a driver's refusal of the test, particularly since the act of refusal is complete at the moment it is communicated to the officer. *Motor Vehicle Admin. v. Vermeersch*, 331 Md. at 193, 626 A.2d at 975. After a driver has refused to submit to a test for alcohol concentration, the signature of a test technician whose services are not employed would be superfluous. Moreover, except for the presence of the conjunctive "and" in the above-quoted statute, nothing in the scheme indicates that a test technician need be present when an officer stops a driver, when the officer requests the driver to take an alcohol concentration test, or when a driver refuses a test. To the contrary, subsection (b) repeatedly refers to the officer alone. *See, e.g.,* § 16.205.-1(b)(1) ("the detaining officer shall advise the person that, on receipt of *a sworn statement from the officer* that the person was so charged and refused to take a test ...") (emphasis added). And, although the legislative history of Chapter 284

of the Acts of 1989 (House Bill 556) does not focus on this particular point, it does contain occasional references that support the MVA's interpretation. *See, e.g.,* "Outline of Changes in the Law Contained in HB 556," on file with the Department of Legislative Reference, Annapolis, Legislative History file of House Bill 556, at 3 ("Sworn statement of officer shall be prima facie evidence of test refusal. Sworn statement of test technician is prima facie evidence of results.")

 The circuit court, in holding that the statute required two signatures to attest to a driver's refusal to submit to a test, suggested that its purpose was to protect the due process rights of suspected drunk driver. It stated that "this is a matter so serious, i.e., the introduction of paper evidence to constitute a prima facie case, that Gaddy did not take the test, that the Legislature wanted two signatures as a fair exchange for the inability of the driver to cross-examine the arresting officer and technician." As we stated above, however, the legislative history is clear: this law is intended primarily to protect the public; it is not primarily concerned with the protection of the suspected drunk driver. Furthermore, under current law a police officer may still be required to appear at the hearing if there is a genuine dispute of material fact. *See* Md.Code (1974, 1992 Repl.Vol., 1993 Cum.Supp.) § 12–206 of the Transportation Article; Md.Code (1974, 1993 Repl.Vol., 1993 Cum.Supp.), § 10–213 of the State Government Article. Requiring two signatures on the certification of refusal and dismissing a suspension for failure to obtain the second signature does nothing to protect the public. In fact, as in *Shrader,* dismissing a suspension under these circumstances "would be inimical to the interests of the public and would enhance the interests of the presumptively drunken driver, an outcome that is contrary to our holdings and to the General Assembly's expressed sentiments." *Shrader,* 324 Md. at 467, 597 A.2d at 945.

The circuit court's interpretation of the statute is contrary to the legislative intent. We hold, therefore, that in the case

of a driver's refusal to take a test for alcohol concentration, § 16–205.1(f)(7)(ii) provides that the sworn statement of the police officer shall be prima facie evidence of such test refusal. A second signature of a test technician is not required by the statute.

*JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR THE ENTRY OF A JUDGMENT AFFIRMING THE ORDER OF THE MOTOR VEHICLE ADMINISTRATION. COSTS TO BE PAID BY RESPONDENT.*