691 A.2d 1328

**Jose BORBON**

v.

**MOTOR VEHICLE ADMINISTRATION.**

**No. 34 Sept. Term, 1996.**

Court of Appeals of Maryland.

April 8, 1997.

268

Michael L. Galavan, Upper Marlboro, for Petitioner.

Dore J. Schwartz, Assistant Attorney General, Glen Burnie; J. Joseph Curran, Jr., Attorney General, Baltimore, all on brief, for Respondent.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

RODOWSKY, Judge.

This is an action for judicial review of the suspension by the Motor Vehicle Administration (MVA) under the implied consent law of the petitioner's motor vehicle operator's license. The issue is whether a result of "insufficient breath" reported by a breath alcohol testing device suffices, in and of itself, to prove that the motorist refused a breath test.

Maryland Code (1977, 1992 Repl.Vol., 1996 Cum.Supp.), § 16–205.1 of the Transportation Article (TR) provides for suspensions of motor vehicle operators' licenses for refusals to submit to chemical tests for intoxication. TR § 16–205.1(f)(8)(i) lists the following four elements that must be present before the MVA may suspend the driver's license or privilege: [1]

"(i) After a hearing, the [MVA] shall suspend the driver's license or privilege to drive of the person charged under subsection (b) or (c) of this section if:

1. The police officer who stopped or detained the person had reasonable grounds to believe the person was driving . . . while intoxicated . . .;

---

**1.** In citing to and quoting from TR § 16–205.1, we focus on provisions relevant to the circumstances of the instant matter, and we do not purport to present all aspects and applications of the provisions cited or quoted.

2. There was evidence of the use by the person of alcohol . . .;

3. The police officer requested a test after the person was fully advised of the administrative sanctions that shall be imposed . . .; and

4. A. The person refused to take the test; or

B. A test to determine alcohol concentration was taken and the test result indicated an alcohol concentration of 0.10 or more at the time of testing."

In this case, at the MVA hearing pursuant to TR §§ 16–205.1 and 12–206, neither the arresting officer, nor the breath test machine operator, nor the motorist testified. The factual record consists of the "ADVICE OF RIGHTS," Form DR–15, the "OFFICER'S CERTIFICATION AND ORDER OF SUS-PENSION," Form DR–15A, the printout from the breath test machine, and the "NOTIFICATION TO DEFENDANT OF RESULT OF TEST FOR ALCOHOL CONCENTRATION," DPSCS–MSP, Form 33. These documents reflect the following facts.

On December 24, 1994, at about 4:00 a.m., Officer D. Dichoso of the Prince George's County Police observed the petitioner, Jose Borbon (Borbon), driving on the wrong side of the road in the 8500 block of Indian Head Highway, Oxon Hill. During the interview following the officer's stop of Borbon's vehicle, the officer observed "a strong odor of an alcoholic beverage on [Borbon's] breath, his eyes very glassy, and slurred speech." Borbon had difficulty standing, and he could not perform field sobriety tests. Borbon either read, or had read to him, the advice of rights, as evidenced by his signature on Form DR–15. A check in a block on that form indicated "YES—Agree to submit to an alcohol concentration test." There was no mark in the block indicating "NO—Alcohol Concentration Test Refused."

Borbon was taken to Station IV of the Prince George's County Police Department where Corporal K. McSwain un-dertook to perform a test for alcohol concentration utilizing an Intoximeter 3000 that bore the serial number 5081. The

Intoximeter 3000 is computer controlled. 3 D.H. Nichols, *Drinking/Driving Litigation, Criminal and Civil* § 30:06, at Chap. 30—Page 24 (1995) (Nichols). The computer printout for the test in the instant matter, excluding identifying information, reads as follows:

"<TIME STARTED OBSERV
04:40
<SIM'. SOL. LOT # >
5081

| TEST | VALUE | TIME |
|------|-------|------|
| BLK | .000 | 04:48 |
| EXTSTD | .101 | 04:50 |
| BLK | .000 | 04:50 |
| INSUFF. BREATH" | | |

The record further shows that, on Form DR–15A, Officer Dichoso checked the box reading, "You refused to take a test to determine alcohol concentration when requested by the Police Officer." Officer Dichoso confiscated Borbon's license and issued a temporary license. A portion of Form DR–15A is the "CERTIFICATION OF TEST TECHNICIAN OR ANALYST." In part it reads: "I performed a test for alcohol concentration on the person described above and the test result was 0. [.]" Corporal McSwain inserted in the blank the word, "Refusal."

Form 33 was signed by Corporal McSwain, Officer Dichoso, and Borbon. The form contains a certification that the testing equipment had been approved by the Toxicologist under the Post Mortem Examiners Commission. Form 33 also contains a certification by the analyst "that the result of the test for alcohol concentration is as stated above. . . ." On the form in Borbon's case the word "Refusal" was handwritten into the blank in the preprinted provision reading, "Breath specimen was found to contain an alcohol concentration of _____ grams of alcohol per 210 liters of breath." [2]

---

**2.** In a similar preprinted statement on Borbon's Form 33, designed to report on a specimen of blood tested for alcohol concentration, the

Under TR § 12–207(a)(2) the MVA "may take judicial notice of technical and scientific facts within its specialized knowledge...." At Borbon's suspension hearing before the MVA, the Administrative Law Judge (ALJ) interpreted the Intoximeter 3000 printout. He explained that between 4:48 and 4:50 a.m. the machine was performing an internal test or verification. The machine first established a zero baseline, then compared to the simulator solution, or external standard, and produced a proper reading of .10. The next step, at 4:50 a.m., reflects that the machine had returned to the zero baseline and was beginning to test Borbon's breath. The ALJ explained that "then the next line says 'insufficient breath,' when one actually tries to test the sample given from Mr. Borbon and [the machine] aborts at that point."[3]

---

blank preceding "grams of alcohol per 100 milliliters of blood" was filled in by a circle with a line drawn wholly through its circumference and midpoint and drawn parallel to the line forming the blank in the preprinted text. The Administrative Law Judge (ALJ) rejected Borbon's argument that this marking indicated that a blood alcohol test had been performed and that there was no alcohol content in the blood. The ALJ concluded that, because there was no other indication that a blood alcohol test had been performed, the marking inserted in the blank concerning blood alcohol was intended to indicate that that blank was not relevant to Borbon's case. We hold that the conclusion on this point by the ALJ was adequately supported by the record.

**3.** The operation of the Intoximeter 3000 is further explained in Nichols § 30.07, at Chap. 30—Page 25–26 as follows:

"When the standard result agrees with the preprogrammed value, the test sequence will continue. The words BLOW UNTIL STAR SUB will be displayed and at that point, the operator instructs the subject to blow into the machine. The display will inform the operator if the subject is blowing hard enough to provide an adequate sample. The amount of air required is 900 cubic centimeters. This amount supposedly guarantees that deep lung air is being sampled by the machine. If the minimum of 900 cc of breath is not delivered, the machine will abort the test at that point. The subject will then be instructed to blow into the machine again. When the appropriate amount of breath has been delivered, a sample is analyzed and the result is displayed in a matter of seconds. The machine will then proceed through another purge and blank cycle. If a second test is required, then the operator will ask the subject to blow again into the machine. The result is displayed and another blank is run. If no further tests are required, the operator stops the test sequence by pushing the print button. The results of all the tests are then printed

Borbon argued that the officer's and technician's conclusion of a test refusal was unsupported by the documents in evidence. The ALJ, however, decided that Borbon "gave [an] insufficient sample which was considered a refusal after [Borbon] was fully advised of the administrative sanctions for the refusal."

Borbon sought judicial review by the Circuit Court for Prince George's County. That court affirmed the MVA on the ground that the record permitted the inference drawn by the ALJ. Borbon then petitioned this Court for the writ of certiorari which we granted.

Here, Borbon argues that "if a 'refusal' can occur after consent has been given, there must be evidence of, and a factual finding that, a defendant either changed his or her mind, or intentionally and purposefully refused to perform the test itself." Brief of Appellant at 8. The MVA approaches the issue from the opposite direction. That agency argues that it was reasonable for the ALJ "to conclude Borbon refused the test by failing to complete it," because "Borbon **never** testified as to the cause of his insufficient sample." Thus, the MVA submits that the ALJ lacked any plausible evidence to the contrary of a refusal. Brief of Appellee at 13.

There is no dispute between the parties that a deliberate frustration by the driver of a breath alcohol test would be a refusal in fact to take the test, even if the driver previously had expressed a willingness to take the test. Here, where the machine aborted the test because of insufficient breath, the issue is whether the report by the machine supports the ALJ's conclusion that Borbon refused testing. The question is whether, under the circumstances here, the MVA, in order to meet its burden as the proponent of license suspension, must produce some evidence that the driver intentionally frustrated the test and thus, by conduct, refused it, or whether proof that the machine reported insufficient breath raises a presumption

out by the machine. It should be emphasized that the computer will not allow the test sequence to continue if any of the steps in the procedure have not been performed properly."

that the driver intentionally frustrated the testing device, so that the burden is on the driver to produce evidence of an innocent explanation for the reported insufficient breath.

## I

The MVA points out that the arresting officer and the Intoximeter 3000 operator had been instructed to report an insufficient breath printout as a refusal by Regulations of the Toxicologist, Post Mortem Examiners Commission, State of Maryland, Regarding Tests of Breath and Blood for Alcohol adopted January 1, 1990, as amended February 1, 1992, and July 1, 1992 (the Regulations).[4] Section III.C.4, dealing with Intoximeter 3000 tests of breath for alcohol, reads:

> "If the subject·fails to complete the required test sequence by either not providing a sufficient breath sample as indicated by the instrument or failing to give a sample when directed to do so by the Operator, then the test shall be considered incomplete and shall be recorded in the State of Maryland Alcohol Testing Log as a refusal."

The role of the toxicologist under the Post Mortem Examiners Commission, as it relates to TR § 16–205.1, is found in subsection (a)(2) thereof. The consent implied from operating a motor vehicle in this State to a test for alcohol is "subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article" (CJ). Md.Code (1974, 1995 Repl.Vol.), CJ § 10–304(a)(3) defines a "qualified person" for the administration of a breath or blood alcohol test

---

**4.** The parties have not cited us to, and we have not found, any official citation to the Regulations. In 1991 this Court pointed out that the Regulations, as then constituted, were included as an appendix to the Maryland DWI manual prepared by the Maryland State Police and that the "Maryland State Law Library has a copy of the 1983 and the 1990 Regulations, but they are not otherwise published." *Krauss v. State,* 322 Md. 376, 381, 587 A.2d 1102, 1104 (1991). In the instant matter MVA has furnished portions from the Regulations as an appendix to its brief. Borbon has raised no objection to this material. Nor has he raised any issue under Md.Code (1984, 1995 Repl.Vol.), §§ 10–101 through 10–139 of the State Government Article (Administrative Procedure Act—Regulations).

as one "who has received training in the use of the equipment in a training program approved by the toxicologist...." Further, "[t]he test of breath shall be administered by a qualified person with equipment approved by the toxicologist...." CJ § 10–304(b).

We have not been cited to, nor have we found, any statute that authorizes the toxicologist to establish evidentiary presumptions or to allocate the burdens of production and persuasion at an MVA suspension hearing involving an alleged violation of the implied consent law. Regulation of those evidentiary matters is not implied from the authority to approve equipment and training programs. Thus, to the extent that § III.C.4 of the Regulations undertakes to establish a presumption of an intentional refusal to submit to a test based on a printout of insufficient breath, the Regulations exceed the authority statutorily conferred on the toxicologist. *See Mayor of Baltimore v. William E. Koons, Inc.*, 270 Md. 231, 310 A.2d 813 (1973); *John McShain, Inc. v. Comptroller*, 202 Md. 68, 95 A.2d 473 (1953).

II

The MVA argues that TR § 16–205.1(f)(7)(ii) gives *prima facie* evidence effect to reports of test refusal made by the arresting officer and the test equipment operator on Forms DR–15A and 33. That section reads:

"The sworn statement of the police officer and of the test technician or analyst shall be prima facie evidence of a test refusal or a test resulting in an alcohol concentration of 0.10 or more at the time of testing."

In the context of subsection (f)(7)(ii), the "statement[s]" referred to do not embrace the type of test refusal that the ALJ found to have occurred in the instant matter.

"The sworn statement of the police officer," referred to in subsection (f)(7)(ii), is the statement referred to in § 16–205.1(b)(1). This latter provision deals with the advice of rights that the police officer is required to give to the motorist who has been detained on suspicion of an alcohol related

driving offense. "[T]he detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test," the MVA will, for a first offense test refusal, suspend the driver's license for 120 days. TR § 16–205.1(b)(1)(i)2.A. Where the officer has reasonable grounds to believe that an alcohol related driving violation has occurred and "the person refuses to take the test," the officer, *inter alia*, is to "[c]onfiscate the person's driver's license," "personally serve an order of suspension on the person," and "[i]ssue a temporary license to drive." § 16–205.1(b)(3)(i) through (iii). The sworn statement of the police officer that is referred to in subsection (f)(7)(ii) is also referred to in subsection (b)(3)(vii) which provides that "[w]ithin 72 hours after the issuance of the order of suspension" the police officer is to "send any confiscated driver's license, copy of the suspension order, and a sworn statement to the [MVA]." Subsection (b)(3)(vii)2 states that the sworn statement should indicate that "[t]he person refused to take a test when requested by the police officer...."

In addition, the type of test refusal at issue here allegedly involves volitional conduct on the licensee's part during the administration of the test. It is unlikely that the General Assembly intended *prima facie* effect to be given to a police officer's sworn statement that there was a test refusal during the administration of the test when the General Assembly specified that "[t]he officer arresting the individual may not administer the test of breath." CJ § 10–304(b). Rather, the sworn statement of refusal by the officer, referred to in § 16–205.1(f)(7)(ii), is the express, categorical refusal during initial detention that ordinarily is not followed by any attempt to test.

There is no provision in TR § 16–201.5 for a "sworn statement ... of the test technician or analyst," other than in subsection (f)(7)(ii). CJ § 10–306(a)(2), however, does address the contents of a "report" that is to be made by the test technician or analyst. Although CJ § 10–306 addresses the circumstances under which the report of the technician or analyst is admissible as substantive evidence in certain crimi-

nal trials, the report may also be admissible, without the presence or testimony of the technician or analyst, in an MVA suspension hearing under TR § 16–205.1 pursuant to the evidence section of the Administrative Procedure Act, Md. Code (1984, 1995 Repl.Vol.), § 10–213 of the State Government Article. CJ § 10–306(a)(2) states:

"To be admissible under paragraph (1) of this subsection, the report shall:

(i) Identify the technician or analyst as a 'qualified person,' as defined in § 10–304 of this subtitle;

(ii) State that the test was performed with equipment approved by the toxicologist under the Post Mortem Examiners Commission at the direction of a police officer; and

(iii) State that the result of the test is as stated in the report."

The test results contemplated by CJ § 10–306(a)(2)(iii) are an alcohol concentration measured by grams of alcohol per 210 liters of breath. *See* CJ § 10–307(a)(2)(ii). The measurement derived from testing a particular individual is to be compared to the statutory presumptions of the effect of various alcohol levels established in CJ § 10–307(b) through (g).

We construed TR § 16.205.1(f)(7)(ii) in *Motor Vehicle Admin. v. Gaddy,* 335 Md. 342, 643 A.2d 442 (1994). The licensee in that case argued that the administrative record failed to support his license revocation for a test refusal made in response to the officer's request that the driver submit to a breath test. Relying on a literal reading of subsection (f)(7)(ii), the licensee argued that the Form DR–15A sent to the MVA in his case by the arresting officer was legally insufficient because it was signed only by that officer and because the statute also required the signature of the technician or analyst. *Id.* at 344–46, 643 A.2d at 443–44. In rejecting that contention, we said:

"The police officer who initially stops the driver, suspects alcohol misuse, and requests a chemical test is in the better position to attest to a driver's refusal of the test, particularly since the act of refusal is complete at the moment it is

communicated to the officer. *Motor Vehicle Admin. v. Vermeersch,* 331 Md. [188,] 193, 626 A.2d [972,] 975 [1993].[5] After a driver has refused to submit to a test for alcohol concentration, the signature of a test technician whose services are not employed would be superfluous. Moreover, except for the presence of the conjunctive 'and' in the above-quoted statute, nothing in the scheme indicates that a test technician need be present when an officer stops a driver, when the officer requests the driver to take an alcohol concentration test, or when a driver refuses a test. To the contrary, subsection (b) repeatedly refers to the officer alone."

*Id.* at 348, 643 A.2d at 445.

Accordingly, we hold that the statement to which *prima facie* effect is given under subsection (f)(7)(ii) concerning the refusal of a test does not deal with a refusal based upon intentional frustration of a test during the administration of the test to which the driver purportedly has consented.

### III

There remains to be considered the effect of the printout from the Intoximeter 3000, unaided by any legislative declarations of *prima facie* effect. It has been recognized, at least theoretically, that a person does not violate an implied consent law if that person is unable to produce a sufficient breath specimen for testing purposes due to physical disability or other cause not involving the volition of the person being tested. *See* R.G. Donaldson, Annotation, *Sufficiency of Showing of Physical Inability to Take Tests for Driving While*

---

5. By Chapter 609 of the Acts of 1993, effective October 1, 1993, subsection (g) was added to TR § 16–205.1. Subsection (g) deals with the withdrawal of an initial refusal to take a test and establishes factors that the MVA is to consider in determining whether an initial refusal effectively has been withdrawn. TR § 16–205.1(g)(4) provides that "[i]n determining whether a person has withdrawn an initial refusal for the purposes of paragraph (1) of this subsection, the burden of proof rests with the person to establish by a preponderance of the evidence the requirements of paragraph (2) of this subsection."

*Intoxicated to Justify Refusal,* 68 A.L.R.4th 776 (1989); Nichols § 20:29, at Chap. 20—Pages 94–97. Essentially, Borbon's position is that the ALJ could not find that Borbon refused the test by intentionally failing to complete it because of the possibility that Borbon was physically unable to produce a sufficient breath sample.

Here, the record shows that the machine was functioning as designed. Further, the sworn statement of Corporal McSwain certifies that the test equipment was approved by the toxicologist. The General Assembly's purpose for requiring approval of the test equipment was to gain some assurance that the equipment used would measure with reasonable accuracy the breath alcohol of licensees who were believed to have committed alcohol related driving violations. The legislative purpose would be defeated by approving equipment on which the great majority of licensees apprehended for alcohol related driving violations would be physically unable to produce a sufficient breath sample. In other words, over the universe of licensees tested on the Intoximeter 3000 almost all should be able to produce a sufficient breath sample.

The relevant universe, however, for the issue before us is all licensees whose tests on the Intoximeter 3000 produced printouts of insufficient breath. Of that universe, some licensees will be deliberately frustrating the test, and some will be physically unable to produce the required sample. In describing Intoximeters, Nichols states:

"All breath testing devices including the various Intoximeter models use the breath/blood ratio of 2100:1 to correlate the amount of alcohol in the breath to the amount of alcohol in the blood. This ratio applies only to deep lung air. Therefore, the Intoximeters have been designed to obtain a breath sample from deep lung air. The methods used to collect such a sample are different for every machine, but it usually requires the individual being tested to exhale a rather large volume of air."

*Id.* § 30:01, at Chap. 30—Page 1.

In the instant matter the printout reporting insufficient breath does not indicate whether Borbon was unwilling

or unable to produce the required volume of deep lung air. Absent any other evidence in the record bearing on the point, and, absent a shifting of the burden of proof by a statute or authorized regulation, the ordinary rule applies, *i.e.*, the MVA, as the proponent of suspending Borbon's license, had the burden of establishing that there had been a refusal by conduct. *Compare Short v. Wells*, 249 Md. 491, 496, 240 A.2d 224, 227 (1968) ("[W]here . . . circumstantial evidence of specific acts of negligence is introduced, but the plaintiff goes on and introduces evidence of nonnegligence or of an independent intervening cause, a verdict must be directed against him because the jury is left to speculate as to which inference to draw."); *Rawls v. Hochschild, Kohn & Co.*, 207 Md. 113, 119, 113 A.2d 405, 408 (1955) (plaintiff's "burden is not met if it appears that the injuries resulted either from the defendant's negligence or from some independent cause, for the existence of which the defendant is not responsible, unless the plaintiff excludes the independent cause as the proximate cause of the injuries."); *Strasburger v. Vogel*, 103 Md. 85, 91–92, 63 A. 202, 204 (1906) ("[W]hen the plaintiff himself shows that the injury complained of must have resulted *either* from the negligence of the defendant *or* from an independent cause for the existence of which the defendant is in no way responsible, he cannot be permitted to recover until he excludes the independent cause as the efficient and proximate cause of the injury."); *Langville v. Glen Burnie Coach Lines, Inc.*, 233 Md. 181, 185, 195 A.2d 717, 719 (1963) (same); *Joffre v. Canada Dry Ginger Ale, Inc.*, 222 Md. 1, 8–9, 158 A.2d 631, 635 (1960) (same); *Chesapeake & Potomac Tel. Co. v. Hicks,* 25 Md.App. 503, 524–25, 337 A.2d 744, 756–57 (1975) (same).

There are cases under implied consent laws, in which the licensee produced an insufficient sample for a breath alcohol test, where the courts have sustained the license suspension because the licensing authorities produced some evidence, in addition to the incomplete test, that the licensee was intentionally uncooperative. *See Baker v. State*, 42 Colo.App. 133, 593 P.2d 1384, 1385 (1979) (licensee "had a coin in his mouth which he was biting, while placing his tongue over the entrance to

the balloon. . . ."); *Jordan v. State,* 132 N.H. 34, 561 A.2d 1078, 1079 (1989) (licensee belched into machine after having previously done so and after having been warned not to do so again); *Tolbert v. Hiatt,* 95 N.C.App. 380, 382 S.E.2d 453, 454 (1989) (licensee placed a piece of paper or foreign matter in his mouth); *Geiger v. Hjelle,* 396 N.W.2d 302, 303 (N.D.1986) (arresting officer testified that licensee " 'did not adequately submit to the test,' and licensee refused second test saying 'I've had enough of this run a round [sic].' "); *Jones v. Motor Vehicles Div.,* 90 Or.App. 143, 750 P.2d 1203, 1204 (1988) (licensee "was 'acting like he was blowing into' the instrument, but 'it didn't appear that his cheeks were filling up with air as if he was blowing into the mouthpiece.' "); *Woolman v. State,* 15 Wash.App. 115, 547 P.2d 293, 294 (1976) (licensee "placed the mouthpiece of the breathalyzer in her mouth and 'gave a little puff,' but the machine did not operate.").

In the matter before us, the statements of the arresting officer and of the technician do not include any facts observed by them that tend to support the conclusion of a test refusal. For example, if Borbon had no apparent health problems, a statement to that effect might well have been enough to tip from equipoise and require Borbon to go forward with evidence. Under those circumstances, the knowledge of facts explaining why insufficient breath was reported by the machine would have been wholly with the licensee. That posture of the case might well give rise to a presumption that the licensee was unwilling to cooperate. *Compare Pennsylvania R.R. Co. v. Lord,* 159 Md. 518, 526–27, 151 A. 400, 404 (1930) (The reason for the rebuttable presumption that the operator of a motor vehicle is the servant of the owner is that knowledge of the true relationship "and the ability to show the true state of facts, are peculiarly within the possession of the owner.").

Another reason why the printout of insufficient breath on Borbon's test should not have been reported as a refusal is based on the Regulations. In § III.C.3 they state in relevant part:

"The instrument will only accept a proper deep lung sample. If the sample is insufficient, the instrument automatically aborts the sample, goes into a purge cycle, then a blank cycle and requests another breath sample. The instrument will allow 3 attempts, with 3 minutes per attempt; otherwise, it is an incomplete test and the instrument will discontinue any further testing."

Under the ALJ's interpretation of the printout from the Intoximeter 3000, there was only one attempt to obtain a sufficient sample. Under the Regulations it would appear that a reading of insufficient breath should not have been reported as a refusal until three attempts had been made to obtain a sufficient sample.

There are states in which, based upon the language of the implied consent statute, the courts have held that the fact of an incomplete test, in and of itself, puts the burden on the licensee to prove that the test was not refused. *See, e.g., People v. Orth,* 124 Ill.2d 326, 125 Ill.Dec. 182, 530 N.E.2d 210 (1988) (licensee required to be warned of suspension for refusal to submit to, or *complete,* the test); *Swanke v. Commissioner,* 385 N.W.2d 403, 405 (Minn.Ct.App.1986) (statute provides "failure of a person to provide two separate, adequate breath samples in a proper sequence constitutes a refusal."). The Maryland statute does not contain similar language.

The MVA urges that we adopt a line of cases decided by the Commonwealth Court of Pennsylvania under a statute similar to the Maryland statute. The MVA cites *Pappas v. Commonwealth,* 669 A.2d 504 (Pa.Commw.Ct.1996), *Mueller v. Commonwealth,* 657 A.2d 90 (Pa.Commw.Ct.), *appeal denied,* 542 Pa. 637, 665 A.2d 471 (1995), *Commonwealth v. Berta,* 120 Pa.Cmwlth. 558, 549 A.2d 262 (1988), and *Commonwealth v. Jones,* 38 Pa.Cmwlth. 400, 395 A.2d 592 (1978). The rule of this line of cases is synthesized in *Commonwealth v. Kilrain,* 140 Pa.Cmwlth. 484, 593 A.2d 932, *appeal denied,* 529 Pa. 625, 600 A.2d 541 (1991), where the court said:

"The bedrock principal in *Berta* and *Jones* is that failure to complete a breathalyzer test constitutes a refusal. A trial court's finding that a licensee made a good faith attempt to complete the breathalyzer test is *irrelevant* to the question of whether the licensee refused the test. Anything less than a completed breathalyzer test which registers a blood alcohol reading on the breathalyzer constitutes a refusal."

593 A.2d at 935 (emphasis added).

In *Jones,* at a de novo trial court review of the licensee's suspension, the machine operator testified that the licensee was blowing air out of the sides of her mouth, while the licensee testified that she made a good faith effort to comply. The trial court believed the licensee and reversed the suspension. The Pennsylvania Commonwealth Court reversed the trial court, holding that, "given the testimony of the machine operator, [the licensee's] evidence was legally insufficient to avoid the burden placed on her ... to produce evidence that she was physically unable to take the test." *Id.* 395 A.2d at 594–95. The holding in *Jones* was described in *Berta* to be that "such self-serving testimony standing alone was insufficient as a matter of law, absent competent medical evidence, to show that Jones was unable to take the test." *Berta,* 549 A.2d at 264.

This very rigid Pennsylvania approach is inconsistent with Maryland administrative law and practice. Even though MVA suspension hearings under the implied consent law are designed to permit the MVA's case to be made in most instances from a documentary record, it remains the duty of the ALJ to make credibility determinations where the MVA's documentary case conflicts with the testimony of the licensee. *See Motor Vehicle Admin. v. Karwacki,* 340 Md. 271, 666 A.2d 511 (1995). Nor will we adopt only that portion of the Pennsylvania rule that judicially places the burden of proof of an innocent explanation on the licensee in *all* cases, based on the report of insufficient breath alone. Given that some cases of insufficient breath are explained by inability and not by

unwillingness, the rule sought by the MVA would confer on the machine the ALJ's function of determining whether the MVA has made out enough of a case of refusal to require the licensee to produce evidence.

For the foregoing reasons, we reverse the judgment of the circuit court.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED. COSTS IN THIS COURT AND IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY TO BE PAID BY THE RESPONDENT, MOTOR VEHICLE ADMINISTRATION.**