53 A.3d 340

## MOTOR VEHICLE ADMINISTRATION

v.

### Donald Wade McMILLAN.

### No. 60, Sept. Term, 2010.

Court of Appeals of Maryland.

Sept. 24, 2012.

**562**

Leight D. Collins, Asst. Atty. Gen., Motor Vehicle Administration of Glen Burnie, MD (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

No argument on behalf of respondent.

Argued before: BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY *, ADKINS and BARBERA, JJ.

PER CURIAM.

The issue before us is whether a test technician's certification that a driver refused to complete an alcohol concentration

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

test after initially submitting to it—when coupled with the evidence that the driver had been explained the testing procedure and was in "good health"—is *prima facie* evidence of refusal under Section 16–205.1 of the Transportation Article ("TA") of the Maryland Annotated Code.[1] We hold that it is, affirming the findings of the Administrative Law Judge ("ALJ") of the Maryland Office of Administrative Hearings[2].

## Facts and Legal Proceedings

In the early morning hours of August 16, 2009, two deputies observed an Infiniti automobile speeding on Route 1 in Carroll County. They stopped the vehicle and identified the driver as Donald Wade McMillan. His eyes were bloodshot and glassy, and he smelled of alcohol. The deputies arrested McMillan after he failed a field sobriety test and brought him to the sheriff's office.

Once there, McMillan was read his "Advice of Rights" under TA Section 16–205.1 and agreed to submit to the alcohol concentration test. The test technician, Corporal Sutton, marked a DR–15A form indicating that the testing procedure had been explained to McMillan and that he appeared to be in good health. According to McMillan, he attempted to blow into the Intoximeter seven times, but was not blowing either long or hard enough to produce a reading.

Sutton described McMillan's failed attempt to complete the test by writing on the DR–15A form: "Subject refused to blow into the [I]ntoximeter." Sutton did not mark the box labeled

---

1. In its brief, the Motor Vehicle Administration ("MVA") posed the question as follows:

   Did the test technician's certification show *prima facie* proof of a refusal of an alcohol concentration test, sanctioned under Transportation Article § 16–205.1, when, after agreeing to take a breath test, being provided an explanation of the breath test procedure, and appearing in good health, the motorist nevertheless "refused to blow into the [I]ntoximeter?"

2. The MVA had delegated final administrative decision-making authority in cases like this one to the Maryland Office of Administrative Hearings. Md.Code Regs. ("COMAR") 11.11.02.07.

"Refusal—Insufficient Breath" but indicated additionally that McMillan "refused to take a test to determine alcohol concentration when requested by the Police Officer." The deputies confiscated McMillan's license, ordered it suspended, and issued a temporary license.

McMillan made a timely request under TA Section 16–205.1(f) for a hearing before an ALJ. McMillan explained at the hearing that he had not slept for two nights prior to the arrest and was pulled over on his way home from a concert where "people were throwing pitchers of beer." He attributed his poor performance on the field sobriety test to his involvement in a motorcycle accident that "messed up both [of his] ankles." With regard to the Intoximeter test administered at the Sheriff's office, McMillan said that he had asked Sutton to demonstrate how to properly breathe into the mouthpiece and even offered to give a blood sample at a hospital, but Sutton refused. After the seventh unsuccessful attempt, Sutton told McMillan he would be written up as refusing the test.

The ALJ did not find McMillan's testimony credible.[3] She reasoned that it is not difficult to blow into the machine when sober and following the directions of the technician. The ALJ also observed that McMillan appeared to be in good health and did not testify to any medical problems that might have affected him during the test. In the ALJ's eyes, the test technician's affirmation that McMillan "refused to blow into the [I]ntoximeter" was more credible than McMillan's denial. Thus, she found that McMillan refused to take the breath test and imposed the sentence mandated by the statute: a 120–day suspension of his driver's license and a one-year suspension of his commercial driver's license.

McMillan filed a petition for judicial review in the Circuit Court for Cecil County, which reversed the ALJ's judgment. Referencing *Borbon v. Motor Vehicle Admin.*, 345 Md. 267, 691 A.2d 1328 (1997), the court held that the Motor Vehicle

---

**3.** McMillan had the opportunity under COMAR 11.11.03.07 to subpoena the testimony of the officer who observed and certified the test refusal, but he did not do so.

Administration ("MVA") failed to show evidence that McMillan refused the test.

The MVA petitioned for *certiorari,* which we granted on July 21, 2010.[4] *See Motor Vehicle Admin. v. McMillan,* 415 Md. 114, 999 A.2d 179 (2010).

## Discussion

### I. Standard of Review

As we recently reiterated in *Motor Vehicle Admin. v. Lipella,* in reviewing a decision of a state administrative agency, "we review the action of the agency directly, rather than the judgment of the intervening reviewing court." 427 Md. 455, 466, 48 A.3d 803 (2012) (filed June 25, 2012) (citing *Consumer Prot. Div. v. Morgan,* 387 Md. 125, 160, 874 A.2d 919, 939 (2005)). Our role in analyzing the decision of an administrative agency is "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Motor Vehicle Admin. v. Weller,* 390 Md. 115, 141, 887 A.2d 1042, 1057–58 (2005) (citations omitted).

The "substantial evidence test" has been met if "a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Id.* Moreover, a "reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record," and "must review the agency's decision in the light most favorable to it." *Id.* This is so because "it is the agency's province to resolve conflicting evidence and to draw inferences from that evidence." *Id.*

With this standard in mind, under the Maryland Administrative Procedure Act, a reviewing court may "(1) remand the case for further proceedings; (2) affirm the final decision; or

---

4. McMillan did not file a brief in this Court, nor did he appear for oral argument.

(3) reverse or modify the decision."[5]   Md.Code (1957, 2009 Repl. Vol.), State Gov't Art., § 10–222(h).

## II.   Analysis

■   Section 16–205.1 of the Transportation Article of the Maryland Code allows the MVA to suspend a driver's license and disqualify a commercial driver's license based on a refusal to submit to a chemical test for intoxication.   Md.Code (1977, 2009 Repl.Vol., 2011 Cum.Supp.), TA § 16–205.1(b)(i)(3) & (iii). A refusal may be found not only in instances when the driver outright refuses to take the test, but also when that conclusion is inferred from conduct.   This may happen in situations where the driver first agrees to submit to testing but later deliberately frustrates the testing procedure by blowing improperly into the testing device.   *Borbon,* 345 Md. at 273, 691 A.2d at 1331.

■   The MVA, as a "proponent" of suspensions, has "the burden of establishing that there had been a refusal by conduct."   *Id.* at 280, 691 A.2d at 1334.   Once the MVA offers some evidence to "support the conclusion of test refusal," the burden shifts to the driver to demonstrate that there is an innocent explanation for his or her failure to complete the test. *Id.* at 281, 691 A.2d at 1335.   If the driver does not do that, the suspension is proper based on the MVA's documentary record showing that the driver refused to complete the test.

### A.   The *Prima Facie* Evidence of Refusal

Section 16–205.1 (f)(7)(ii) gives *prima facie* evidence effect to a "sworn statement of the police officer and of the test

---

**5.**   A court's power to reverse or modify a finding or a decision under the Maryland Administrative Procedure Act is limited to instances when a petitioner's "substantial right" has been

   prejudiced because [the] finding, conclusion, or decision: (i) is unconstitutional; (ii) exceeds the statutory authority or jurisdiction of the decision maker; (iii) results from an unlawful procedure; (iv) is affected by any other error of law; (v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or (vi) is arbitrary and capricious.

Md.Code (1957, 2009 Repl. Vol.), State Gov't Art., § 10–222(h).

technician or analyst ... of a test refusal." TA § 16–205. 1(f)(7)(ii). We have interpreted this section, however, as applying only to an express refusal to take the test, as opposed to "a refusal based upon intentional frustration of a test during the administration of the test." *Borbon,* 345 Md. at 278, 691 A.2d at 1333. In instances such as here, where the motorist first agrees to take the test but later fails to complete it, the MVA "must produce some evidence that the driver intentionally frustrated the test and thus, by conduct, refused it." *See id.* at 273, 691 A.2d at 1331.

We had an opportunity to analyze the MVA's burden of proof in *Borbon.* There, similarly to this case, the driver initially consented to the test but failed to complete it. As evidence of the driver's refusal to submit to the test, the MVA offered two types of documentary evidence. First, there was a machine-generated report stating that there was "insufficient breath" for a reading.[6] *Id.* at 271, 691 A.2d at 1330. Second, the forms contained the word "refusal" in the blanks intended for test results.[7] *Id.* Importantly, neither the statements of the arresting officer nor the test technician "include[d] any facts observed by them that tend to support the conclusion of a test refusal." [8] *Id.* at 281, 691 A.2d at 1335. Based on that evidence, we held that—without more informa-

---

**6.** Further doubting whether Borbon intentionally refused the test, we pointed out that according to the Regulations of the State Toxicologist, "a reading of insufficient breath should not have been reported as a refusal until three attempts had been made to obtain a sufficient sample." *Borbon v. Motor Vehicle Admin.,* 345 Md. 267, 282, 691 A.2d 1328, 1335 (1997).

**7.** First, on the DR–15A form that read: "I performed a test for alcohol concentration ... and the test result was 0.[.]," the test technician "inserted in the blank the word, 'Refusal.'" *Id.* at 271, 691 A.2d at 1330. Second, on Form 33, "the word 'Refusal' was handwritten into the blank in the preprinted provision reading, 'Breath specimen was found to contain an alcohol concentration of ____ grams of alcohol per 210 liters of breath.'" *Id.*

**8.** As the MVA observed at oral argument here, it amended the DR–15A form following *Borbon* to include boxes, which the test technician may check to certify that the testing procedure was explained to the driver, and that the driver appeared to be in good health.

tion—it was impossible to know "whether Borbon was unwilling or unable to produce the required volume of deep lung air." *Id.* at 279–80, 691 A.2d at 1334.

We reasoned, however, that the outcome could have been different if there had been *some* evidence indicating what led the test technician to conclude that Borbon intentionally frustrated the test: "For example, if Borbon had no apparent health problems, a statement to that effect might well have been enough to tip from equipoise and require Borbon to go forward with evidence." *Id.* at 281, 691 A.2d at 1335. We explained that so long as the technician gave a basis for the conclusion that the driver refused the test, "the knowledge of facts explaining why insufficient breath was reported by the machine would have been wholly with the licensee. That posture of the case might well give rise to a presumption that the licensee was unwilling to cooperate." *Id.*

In this case, McMillan's license was confiscated after Corporal Sutton determined that McMillan refused to submit to the test. Specifically, Sutton described McMillan's failed attempt to complete the test by making two notations on the DR–15A form: by writing "Subject refused to blow into the [I]ntoximeter" on the form, and by checking the pre-printed box to indicate that the driver "refused to take a test to determine alcohol concentration when requested by the Police Officer." Unlike the documentary evidence in *Borbon* that provided no basis for the test technician's conclusion that Borbon's failure to complete the test resulted from his "unwillingness," rather than physical "inability," to submit to the test, *id.* at 279–80, 691 A.2d at 1334, in this case the DR 15–A form does contain such information.

Namely, in the Certification of Test Technician or Analyst section of the form, Sutton checked two boxes: (1) indicating that the testing procedure had been explained to McMillan, and (2) that he appeared to be in good health. Thus, in this case, there is no mystery as to why the test technician believed McMillan failed to complete the test. Other than the unwillingness to complete the test, little else can explain why a

healthy individual, who had been explained the testing procedure, would not be able to blow properly into the Intoximeter to complete the test. As we observed in *Borbon*, "over the universe of licensees tested on Intoximeter 3000 almost all should be able to produce a sufficient breath sample." *Id.* at 279, 691 A.2d at 1334.

We hold that the test technician's certification on the DR 15–A form that McMillan "refused to blow into [I]ntoximeter"—coupled with the certifications that the procedure had been explained to McMillan and that he was in good health—is *prima facie* evidence of refusal under TA § 16–205.1.

## B. The Driver's Opportunity to Overcome the Presumption of Refusal

■ This *prima facie* evidence of a refusal provides a sufficient basis for suspending a driver's license and disqualifying the driver from driving a commercial motor vehicle under TA Section 16–205.1. Accordingly, if the driver does not challenge the suspension order issued by the police based on the certification of refusal, the MVA will suspend the driver's license and, if the driver is also licensed to operate a commercial motor vehicle, disqualify him or her from engaging in that activity. *See* TA § 16–205.1(f). The driver may, however, request an administrative hearing under TA Section 16–205.1(f), where he or she will have an opportunity "to show cause why his driver's license or privilege should not be suspended for refusal to take an alcohol concentration test as requested." *Motor Vehicle Admin. v. Karwacki,* 340 Md. 271, 276, 666 A.2d 511, 514 (1995).

■ In license suspension cases under TA Section 16–205.1(f), the MVA often proceeds on "a documentary record" containing *prima facie* evidence on which the police officer issued the suspension order. *Borbon,* 345 Md. at 283, 691 A.2d at 1336. "Being *prima facie* evidence of a test refusal, [this evidence], unless explained or contradicted, [is] sufficient to establish that the respondent refused to take an alcohol concentration test." *See Karwacki,* 340 Md. at 283, 666 A.2d

at 516. At the hearing before the ALJ, the driver may attempt to overcome the presumption of refusal "by other evidence, whether documentary or testimonial, which rebuts or contradicts it." *Id.*, 666 A.2d at 517. In cases "where the MVA's documentary case conflicts with the testimony of the licensee," the ALJ "will make credibility determinations." *Borbon*, 345 Md. at 283, 691 A.2d at 1336. If the ALJ finds the driver's "testimony reliable," then the *prima facie* evidence produced by MVA would be "undermined" and "no longer would [be] sufficient to establish the fact that the respondent refused the test." *Karwacki*, 340 Md. at 284, 666 A.2d at 517.

In this case, McMillan did exercise his right under the statute and requested a show cause hearing. Because McMillan chose not to subpoena Corporal Sutton or the arresting officers,[9] the only evidence that the ALJ had before her was Corporal Sutton's sworn certification on Form DR–15A and McMillan's own testimony. McMillan attempted to contradict Corporal Sutton's certification of refusal by providing an explanation for his failure to complete the test and the appearance that he was intoxicated. He explained that his eyes were bloodshot because he had not slept in two days and that he smelled of alcohol because he had been sprayed with beer at a concert he attended earlier that night. Discussing the test, McMillan testified that he blew into the Intoximeter seven times but, although he did his best, each time he either did not blow long or hard enough for the machine to produce a reading. He also stated that he asked Sutton to show exactly

**9.** The MVA argues that McMillan's failure to subpoena the officers and his attempt to simultaneously argue that MVA failed to present any evidence, when such evidence would have been provided by the subpoenaed officer, would create "a standard of proof by which drunken driving suspects who refuse an alcohol test by conduct may immunize themselves from sanctions merely by electing not to subpoena the testimony of the officer who observed and certified the test refusal," and we agree. *See Motor Vehicle Admin. v. Karwacki*, 340 Md. 271, 282–83, 666 A.2d 511, 516–17 (1995) (observing that when a defendant fails to subpoena the officers for testimony, there is no basis for relief when those officers' certifications are deemed more credible by an ALJ than the defendant's testimony).

how to blow into the mouthpiece and offered to pay for an extra set that Sutton could use, but that Sutton refused. Finally, McMillan testified that he volunteered to check himself into a hospital and get a blood test, which, he said, would have proven that he was not intoxicated.

Recognizing that there was a conflict between Sutton's sworn certification and McMillan's testimony and acknowledging that it was her responsibility to resolve any inconsistencies based on the parties' credibility, the ALJ found McMillan's testimony not credible:

> I don't find [McMillan's] testimony to be credible. It is not difficult to blow into the breathalyzer machine when you're not intoxicated and you're following the directions of the police officer. The police officer, according to your testimony, gave you seven tries to be able to blow into the machine and you were unable to do so.

Stressing that McMillan "appear[ed] to be a healthy person," the ALJ further observed: "You haven't testified that there were any medical problems with you that night." Thus, the ALJ concluded, "The police officer said that you refused to blow into the intoxometer [sic] and I find that evidence is more credible than Mr. McMillan's denial."

It was the ALJ's responsibility to decide "whether evidence offered to rebut or contradict the *prima facie* evidence actually does so." *Karwacki*, 340 Md. at 283, 666 A.2d at 517. What matters to us is that the ALJ's conclusion that McMillan refused the test is supported by substantial evidence in the record: namely, Corporal Sutton's certification that McMillan had been explained the procedure and was in good health, but refused to complete the test. Notwithstanding McMillan's testimony to the contrary, Corporal Sutton's certification on the DR15–A form "provides adequate support for the ALJ's conclusion." *See id.*, 340 Md. at 285, 666 A.2d at 518. Thus, we affirm the ALJ's findings.

## Conclusion

A test technician's certification that the driver refused to take the test—accompanied by the certification that the driver

had been explained the procedure and appeared to be in good health—is *prima facie* evidence of refusal under TA Section 16–205.1. Unless the driver convinces the ALJ that there is an innocent explanation for his or her failure to complete the test, the *prima facie* evidence gives a sufficient basis for the license suspension and disqualification from driving commercial vehicles. Here, there was *prima facie* evidence of refusal. McMillan offered testimony to rebut it, but the ALJ found his testimony not credible. Her finding that McMillan refused to complete the test was supported by substantial evidence. The Circuit Court erred in reversing the ALJ.

**JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE. COSTS TO BE PAID BY RESPONDENT.**